James S. Brown, J.
This action was brought by the infant plaintiff (hereinafter called plaintiff) and his mother to recover damages for personal injuries sustained when he was assaulted in the schoolyard of Lafayette High School in Brooklyn, where he was a freshman.
The questions presented by the appellant on this appeal are (1) whether defendant Board of Education exercised ordinary care in supervising activities within the schoolyard, and (2) whether there was any causal relation between an alleged lack of adequate supervision and the assault committed upon plaintiff.
The schoolyard here involved comprises a fairly large area. Among its facilities is a turf field measuring 400 feet by 150 feet and a cement section which is subdivided by cyclone fences into areas for handball courts (300 feet by 60 feet), volleyball, softball, basketball and other athletic activities.
On June 8, 1955, between 1:00 and 2:00 p.m., plaintiff, then aged 14 years, was attending a gym class in the schoolyard. Shortly before the end of the period, plaintiff started walking to the locker room, bouncing a ball, when another boy seized the ball. Plaintiff retrieved it and continued on his way when he was set upon and brutally assaulted by three other students, sustaining serious injuries. Plaintiff did nothing to provoke the assault. Two of the assailants were not members of the gym class.
The teacher in charge was not in the schoolyard when the incident occurred. About three minutes before the end of the period, he blew his whistle as a signal to end all activities, after which the students proceeded to the locker room to change from sneakers to shoes. The teacher testified that after a ‘ ‘ goodly portion ’ ’ of the students had departed, he went to the locker room to collect equipment which had been given out at the beginning of the period. He was in the locker room at the time of the assault.
He estimated that 200 to 250 students were present, including his own class of 125 pupils. He accounted for the excess by stating that any student was free to use the schoolyard along with those attending the regular gym classes. He also testified that it was the practice of the school to separate “difficult” students from the well-behaved ones in other classes, but that there was no such separation in the gym class. He was aware that two of the assaulting students were in the schoolyard, that they did not belong to the gym class, and that one of them was a “ trouble maker.” He did not ask them to leave at any time,
*22 School records of plaintiff and the boys who attacked him were received in evidence. Plaintiff had no disciplinary history. The record of one of the others disclosed that on January 12, 1955 he was reported for striking a girl in class three times. On other occasions, he insulted a teacher and committed various acts of insubordination and misconduct, including throwing erasers in the classroom, twisting girls’ arms and using abusive language. One teacher reported that 1 ‘ he is making it personally impossible for me to conduct and control my class.” The record of the second of the assaulting students revealed that he had a volatile temper, a disposition to use his hands freely, instances of fighting, punching a girl, and other misconduct. No evidence was presented concerning any improper behavior on the part of the third attacker.
After the trial was concluded, the jury returned a single verdict in the sum of $900 against the Board of Education. By stipulation, $800 was allocated to the infant plaintiff and $100 to his mother. The complaint was dismissed against defendant the City of New York which is not concerned with this appeal.
Defendant Board of Education urges that plaintiff failed to establish negligence in the degree, extent or manner of supervision of the schoolyard; that the proximate cause of the assault was not lack of supervision but the unpredictable act of third parties which could not reasonably have been foreseen. Plaintiff contends that the Education Law imposed a duty upon defendant to provide adequate supervision and that the question as to whether it had violated such duty was one of fact for the jury.
The Board of Education is required to exercise reasonable care for the safety of the children under its control; it is under a duty to provide adequate supervision of activities in the schoolyard during school hours. (Miller v. Board of Educ., 291 N. Y. 25; Education Law, § 2554, subd, 2.) “Proper supervision depends largely on the circumstances attending the event ’ ’ (Ohman v. Board of Educ., 300 N. Y. 306, 309). However, the board is not chargeable with the consequences of an unforeseen act of a third party. (Ohman v. Board of Educ., supra.)
The basic question here is whether the duty of adequate supervision was breached by defendant and, if so, whether the failure to provide adequate supervision was the proximate cause of the occurrence. On these issues, I think the decisions in Lopez v. City of New York (4 A D 2d 48, affd. 4 N Y 2d 738) and Ferrill v. Board of Educ. (6 A D 2d 690) are most persuasive.
In Lopez v. City of New York (supra) the supervisor of a public playground was eating her lunch in a field or shelter house about 30 feet from the swing area. There was evidence that *23 during the noon hour 20 to 60 children were in the swing area and a total of 100 to 125 children in the whole playground. The Appellate Division reinstated a verdict in favor of the plaintiff upon the ground that the evidence warranted a finding that the defendant had abandoned its duty of general supervision and that such negligence was causally related to the infant plaintiff’s injury.
In Ferrill v. Board of Educ. (supra), where an infant was injured in a school playground during the lunch recess, it was held to be a question for the jury to determine whether two instructors constituted adequate supervision for 125 to 150 children ranging in ages from 6 to 12. (See, also, Rivera v. Board of Educ., 11 A D 2d 7).
The case of Bertola v. Board of Educ. (1 A D 2d 973), upon which defendant places heavy reliance, is readily distinguishable. There the plaintiff was assaulted in a classroom by a classmate. At the time of the occurrence the teacher was just outside the door “ shepherding the members of the class into the class room.” The negligence alleged was that the school, having actual and constructive notice of the assaultive propensities of the pupil who committed the assault, failed to take proper methods to curb such propensities and protect his classmates therefrom. The Appellate Division held that “ The need for closer supervision could not reasonably have been apprehended. ’ ’ The emphasis would thus appear to be on the adequacy of the supervision required under the particular facts and circumstances there existing.
In the situation at bar we are not concerned with adequacy of supervision of a small group in a classroom, as in Bertola, but with a large outdoor area where, admittedly, 200 to 250 youngsters were in attendance. Other distinguishing features are also present in this case. Students who did not belong in the gym class were permitted to use the schoolyard along with those regularly assigned to such class, as were “ difficult ” or problem students who were kept apart from normal students in other classes. The teacher in charge was aware of the presence of at least one troublesome boy, but failed to take any steps to keep him under surveillance. In fact, the area was without supervision of any kind when the teacher repaired to the locker room to attend to chores which might well have been assigned to someone else.
Whether, on all the facts and circumstances here shown, one teacher was adequate or whether other precautions should have been taken for the safety of the students was properly submitted to the jury to be resolved as a question of fact. In my opinion, *24 there was ample evidence to warrant the finding implicit in the jury’s verdict that the occurrence was reasonably foreseeable and that adequate supervision might have prevented it. (Lopez v. City of New York, supra ; Ferrill v. Board of Educ., supra ; cf. Ohman v. Board of Educ., supra ; Rivera v. Board of Educ., supra.) Consequently, I see no reason for interfering with the verdict. The judgment should be affirmed, with $25 costs.
Hart and Daly, JJ., concur.
Judgment affirmed, etc.