Anthony J. Di Giovanna, J.
This is an appeal from a judgment in favor of the plaintiff in the sum of $1,674.
The action was brought to recover damages for personal injuries sustained by the infant plaintiff as a result of an assault committed upon her person by another student assigned to the same class as plaintiff in Junior High School.
It is claimed that the defendant, through its principal and teachers, had knowledge of the vicious propensities of this other student to do harm to others and that they failed in their duty to protect the plaintiff from her.
According to the principal of this Junior High School this other student had been transferred to his school on January 6, 1955 from another Junior High School. The transfer had been made upon the recommendation of the principal of the other school and the assistant superintendent of the defendant in charge of that school because of a record of misbehavior. This principal had been informed of her prior record by the guidance record of the child forwarded at the time of transfer.
According to the guidance record, she had been a source of constant quarreling and aggressive behavior towards other students as well as teachers. The assault in this case took place on March 11, 1955. During the intervening period the principal became fully aware of constant misconduct on the part of this other student. He said: “ She disobeyed even the simplest orders and she felt * # * or she expressed resentment *565 of the treatment by other children and by teachers as well.” Further: u The child was a source of trouble from almost the first day that she arrived in the school.”
From the date of her enrollment to the date of the occurrence he had knowledge of at least three occasions when she assaulted other pupils. On other occasions her misconduct took other forms. His concern was such that he formed the opinion that:
“ this child was a very seriously disturbed child. I use the word ‘ seriously ’ with full awareness of what it means. The youngster has an average I. Q. and average ability, but day after day there were indications that the stability of temper was just not there.
“ You asked me whether I had spoken to her many times and if this was unusual. Certainly, it was, because I was concerned to try to make a good adjustment. Many of the times I spoke to her she had done nothing wrong and I seized these opportunities to praise her and to try to help her. Many days she was on a very smooth and even keel, but as reported to me by at least four or five teachers, they did not know when she would suddenly burst forth with some misbehavior for which we could determine no reason.”
Because of his deep concern he called in the family and he recommended medical attention for the child. Before the date of the attack he asked the Bureau of Child (Guidance on several occasions to have her examined concerning her emotional stability. Despite his requests, the bureau failed to cause the examination to be made. Had the bureau heeded his request an investigation and determination thereon would have been made concerning future treatment for the child.
On the day in question a substitute teacher was in charge of the class. It is conceded that an attack was made by this other student upon the infant plaintiff. The record of the infant plaintiff shows her characteristics as follows: “ Courtesy outstanding. Dependability outstanding. Cooperation outstanding. Self-control satisfactory. Social participation satisfactory. Other personality traits: Very aggressive. This is the kind of child who does not take a back-seat. She steps forward and speaks up.” The principal described the word “ aggressive ” to indicate a co-operative aggressiveness rather than a malicious aggressiveness, one in which a child seeks to do the right things in class and does not hesitate to step forward to do so.
According to the infant plaintiff’s testimony, she gave no cause to the other student to attack her nor was the substitute teacher aware of any friction in the classroom. The occurrence took place at a time when the children had lined up in preparation *566 for a change of period when the hell rang. The injuries, as described by the plaintiff and her doctor, were not contradicted by any testimony offered by the defendant.
In view of the fact that the principal and the substitute teacher had been called as witnesses by the plaintiff, the defendant called no witnesses but rested upon the plaintiffs ’ case.
When the attack took place the substitute teacher attempted to intervene but became aware of her inability to stop the assault because the other student attempted then to strike the teacher, whereupon the teacher summoned a female shop teacher from across the hall who entered the room, blew a whistle and then the fracas stopped. The substitute teacher testified that she was never told by anyone concerning the behavior of the other student. The principal testified that he had never told the substitute teacher about the misconduct of this other student. This substitute teacher had been teaching this class for either one or two days. She had taught this class on one occasion several weeks before. Nothing in her contact with this other student sufficiently alerted her to suspect that an attack such as this would take place.
The defendant contends that the plaintiff failed to make out a prima facie case and relies upon the following series of cases: Ohman v. Board of Educ. (300 N. Y. 306 [1949], motion for rearg. den. 301 N. Y. 662 [1950]); Wilber v. City of Binghamton (271 App. Div. 402 [3d Dept., 1946], affd. 296 N. Y. 950 [1947]); Curcio v. City of New York (275 N. Y. 20 [1937]); Bertola v. Board of Educ. (1 A D 2d 973 [2d Dept., 1956]); Blume v. City of Newburgh (265 App. Div. 965 [2d Dept., 1942], affd. 291 N. Y. 739 [1943]); Clark v. City of Buffalo (288 N. Y. 62 [1942]); Berner v. Board of Educ. (286 N. Y. 174 [1941]); Graff v. Board of Educ. (258 App. Div. 813 [2d Dept., 1939], Affd. 283 N. Y. 574 [1940]); Thompson v. Board of Educ. (280 N. Y. 92 [1939]); Ginsberg v. Board of Educ. N. Y. L. J., Oct. 14, 1946, p. 870, col. 3 [App. Term, 2d Dept.], affd. 272 App. Div. 774 [2d Dept., 1947]).
To that impressive list should be added the following for consideration by the court: Vitagliano v. Board of Educ. (12 A D 2d 655 [decided 12/19/60 by the Appellate Division, 2d Dept.]); May v. Board of Educ. (269 App. Div. 959); Abbott v. New York Public Library (263 App. Div. 314); Selleck v. Board of Educ. (276 App. Div. 263); and Wiener v. Board of Educ. (277 App. Div. 934) .
In my opinion, in none of these cases was the alleged act of negligence comparable to the one involved herein. In the instant case the principal failed to alert the substitute teacher *567 concerning the misconduct of this other student. Consequently the substitute teacher was not in a position to determine whether any supervisory steps had to be taken by her in regard to the other student. It is clear that the assault itself cannot be the basis for liability of the defendant. It is the failure of the principal to have alerted the substitute teacher, thereby depriving her of the opportunity of using her own judgment, which I believe constitutes the act of negligence in this case.
In Ohman v. Board of Educ. (supra) at page 308, the question posed was as follows: “In this tort action for damages for personal injuries suffered by the plaintiff, then a pupil in a public school, we are asked to say that the jury could properly find that it was due to the negligence of the teacher in absenting herself from the classroom. ’ ’ There the injury was sustained as a result of the plaintiff being struck in the eye by a pencil thrown by one pupil to another. The teacher was absent from the classroom while doing some other clerical work. The court predicated its finding in favor of the defendant on the following (p. 309): “ Whether it was done mischievously and heedlessly or wantonly and willfully, or with the serious purpose of returning the pencil to its owner, it was the act of an intervening third party which under the circumstances could hardly have been anticipated in the reasonable exercise of the teacher’s legal duty toward the plaintiff. As we read the statute applicable to New York City, liability of the board for the acts of a teacher is not dependent upon any new or different rules of common-law negligence.”
In our case, as is clearly evidenced by the principal’s testimony, he was aware of this other student’s dangerous conduct from the very first day that she was transferred to his school. He testified: “ The child was a source of trouble from almost the first day that she arrived in the school. * * * She dis-
obeyed even the simplest orders and she felt — or she expressed resentment of the treatment by other children and by teachers as well. ’ ’ He had formed an opinion based upon his observations of her and the complaints made concerning her by teachers and pupils as follows: “ In my opinion this child was a very seriously disturbed child. ’ ’
He was so concerned about her mental instability that even a month after she was in school he asked the Bureau of Child Guidance for their examination of her. He submitted the first request in early February and thereafter again. For reasons unexplained by the Board of Education it failed to call any witnesses. The Bureau of Child Guidance failed to follow the recommendation of the principal made within a month after *568 her admission and conduct such examinations within a reasonable time after receipt of such request.
It is true that on several occasions, even while supervised by teachers who were aware of her propensities, the child attacked others. But on the occasion of the injury to the plaintiff, the substitute teacher had been assigned to the classroom without having been informed by anyone of the serious and dangerous propensities and proclivities of this child. Had she been told, she would have been in a position to decide whether anything further was required to be reasonably done to avoid the trouble. Reasonable care on a teacher’s part might have included the act of compelling the unruly child to sit in a seat directly in front of the teacher, to have compelled the child to stand immediately in front of the line so as to prevent a tendency towards mischief when not under strict observation, or, possibly, to have transferred the child for the day that the substitute teacher was there to the care of a more mature and experienced teacher. The testimony shows clearly that sufficient had been learned about this other student to indicate to the principal of this school, as well as the principal of the prior school and the superintendent in charge thereof that this child was emotionally disturbed and to put them on notice of this fact. Was the act in merely transferring the child to this school an act of a reasonable and prudent person? Or should the superintendent have compelled the Bureau of Child Guidance to have arranged for some kind of medical placement of this youngster in a hospital where proper treatment could be granted? It was within the superintendent’s power to hold a hearing to accomplish this purpose and to call for any kind of aid from the Bureau of Child Guidance to help him make this determination and then, if necessary, exclude her as being dangerous to other children. Under those circumstances, as the court said in the Ohman case (supra) at page 309: “ By such standards, a teacher may be charged only with reasonable care such as a parent of ordinary prudence would exercise under comparable circumstances. Proper supervision depends largely on the circumstances attending the event but so far as the cases indicate, there has been no departure from the usual rules of negligence.”
Also, taking into consideration the trial court’s charge, what would a parent of normal prudence have done under such circumstances? If a parent was aware that a neighbor’s child was sufficiently mentally disturbed as to constitute a source of danger to her own child, she would have taken steps to' have prevented her child from coming into contact with such emo *569 tionally disturbed child. The duty of the defendant was the same. It could not delay the performance of its duty and escape harmless if the very matter which alerted it in this first instance was the very same thing which eventually precipitated the attack upon the plaintiff. In this respect the Ohman ease (supra) differs from our case.
In the Ohman case there had been no proof of similar accidents nor was it seriously contended that a pencil in the hands of a school pupil constituted a dangerous instrumentality. The court decided that this is one of those events which could occur equally as well in the presence of a teacher as during her absence.
However, if this substitute teacher had been informed concerning the aggressive record and behavior of this other child, she would have been in a position to have done something to prevent the altercation in the classroom. In my opinion the jury had the right to determine that the failure on the principal’s part to have informed her of these facts constituted an act of negligence herein, whether or not the acts within the classroom itself were negligent.
In the Ohman case, Judge Conway said in his dissenting opinion at page 311: “ Consequently, a high standard of supervision and care in the crowded schools of New York City, requiring as they do part-time classes in order to accommodate the number of pupils, should be imposed upon principals and teachers. Parents do not send their children to school to be returned to them maimed because of the absence of proper supervision or the abandonment of supervision.” Judge Conway concluded that the jury was justified in finding that the principal was negligent in failing to adopt regulations insuring proper supervision of classes and prohibiting the performance of additional duties which prevented complete supervision during teaching hours. He felt that the decision that no proximate cause had been shown as a matter of law was improper and that, because it is known that children have a known proclivity to act impulsively without thought of the possibilities of danger, supervision is vital. Chief Judge Lottghran concurred with Judge Conway’s dissenting opinion.
In Wilbur v. City of Binghamton (supra) an eight-year-old child was injured during noon recess on the school playground when he was struck in the eye by a stone batted by another pupil. The negligence claimed was that the board failed in its duty to pupils by not providing an additional teacher to answer the telephone during the period when the supervising teacher left the playground for that purpose and that consequently the defendant therein had failed to provide adequate protection for *570 pupils. However, in dismissing the complaint the court said at pages 405-406: “In order to sustain any recovery, it must be based upon the additional finding that such failure was the proximate cause of the accident. Such finding and conclusion would not be warranted. There were no dangerous or defective conditions. There is no evidence of the length of time Sagar had been batting stones or that the accident would not have happened if there had been another teacher in attendance. Teachers could not be expected to watch all movements of pupils. The plaintiff does not claim that the principal was negligent. There is nothing in the record to show that prior to the accident anything had occurred to suggest that vigilance should have been taken to guard against the occurrence which took place.”
In the latter portion of the quote lies the significant difference in our case. Here there is in the proof at the trial sufficient to suggest that the principal had failed in his duty towards the plaintiff because he should have informed the substitute teacher to watch out for mischievous and aggressive conduct on the part of this other child, based on his own knowledge of her prior proclivities.
The ease of Curcio v. City of New York (supra) has no application to the case on appeal.
In the Bertola case (supra), the infant’s injuries were received when he was assaulted in a public school classroom by a classmate. The teacher in charge of the class was just outside of the door of the classroom shepherding the members of the class into the classroom. It was charged that the defendants had actual and constructive notice of the assaultive propensities of the pupil who committed the assault but had failed to take proper methods to curb such propensities and to protect his classmates therefrom. The Appellate Division stated that the reason for the dismissal of the complaint was “ The need for closer supervision could not reasonably have been apprehended.” In that case both of the boys involved were in an opportunity class established particularly for the care of children emotionally unstable or having a low IQ. It was known to the school authorities that the assaultive pupil was under the care of the Bureau of Child Guidance as a problem child. That case differs from the instant one in that therein the Board of Education had done that which a reasonably prudent person should have done under the circumstances, and had separated emotionally unstable, children from the main body of children, and attempted in a reasonable and proper fashion to impart to them some measure of education. I agree that there is nothing in any reasonable rule of law which would require that each such emotionally *571 disturbed pupil be kept in a separate room apart from anybody else and under the supervision of only one teacher and with no classmates. It was sufficient in the exercise of reasonable care and good educational policies for the school authorities to have done that which they did. When the attack occurred under those circumstances it cannot be said that actionable negligence was shown.
But the Bertola case differs from this one in that the substitute teacher had no opportunity to do anything about supervising this assaultive child because she had not been told about her prior propensities and aggressive misconduct. When reasonable conduct has been exercised, a point is reached beyond which one is not required to go. That was reached in the Bertola case when the emotionally disturbed children were separated from the others and had especial supervision. In that respect the decision therein is not applicable to the facts involved herein.
In Blume v. City of Newburgh (supra) an infant seven years of age was injured when using a slide while engaged in playing the game of tag. Actually this case has no relation to the case on appeal. It might be noted that there was a dissenting opinion therein. The court, in reversing the judgment and dismissing the complaint, said: “ To cast appellant in damages under the facts in this case would be imposing upon the city a responsibility greater than reasonable caution requires.” That rule of law was applied to the facts in that case alone and does not constitute authority for any other case.
In Ciarle v. City of Buffalo (supra) an infant was injured when struck in the eye by a piece of glass thrown by a boy. It had been shown that refuse was discarded by users of the park and that in several instances bottles had been broken. However, the evidence also showed that the city employed men whose special duty it was to pick up and remove refuse from the park area for eight hours each day. The rule of law therein enunciated at page 66 rested upon the finding that: “ There is no evidence that prior to the accident the plaintiff, her two companions and the boy who threw the glass were quarrelsome; nor is there proof that anything had occurred in their play either in the wading pool or elsewhere from which the most vigilant life guard or attendant could have anticipated the unprovoked conduct of the boy whose sudden and impulsive act brought injury to the plaintiff.”
In the Berner case the infant plaintiff was injured when she was struck in the left eye by a tennis ball thrown by another pupil. There was proof in the record that prior to the accident there had been occasional instances of youthful antics by *572 students which had taken place in the second floor corridor near the door of the principal’s office. No casualty had resulted from these pranks. There was no proof of a rule which specifically warned against throwing a tennis ball indoors. The Trial Justice charged the jury (p. 177): “ In response to the defendant’s request and without exception by the plaintiffs, that before recovery could be had by the plaintiffs it must appear that a failure by the defendant to adopt rules was the proximate cause of the accident.”
That ruling became the law of the case. The court said at page 178:
‘ ‘ In the determination of this appeal we are not required to define the scope of the defendant’s statutory duties. We have seen that according to the law of the case, as prescribed by the trial justice in his charge, the jury was instructed that the defendant’s liability required as its basis proof that the proximate cause of the accident was a failure by the defendant to adopt rules which would have prevented it.
“ We find in the record no substantial evidence that, prior to the accident which befell the infant plaintiff, the defendant Board of Education or its agents in immediate charge of the school, had permitted ball playing inside the school; nor is there proof that there had been ball throwing indoors or other behavior by the pupils which in character was so dangerous as to render the corridors unsafe for use, or from which danger to pupils could be foreseen.”
Clearly, the dismissal of the complaint therein was based solely upon an insufficiency of proof as defined by the agreed rules of law.
In Thompson v. Board of Educ. (supra) a pupil was injured when another ran into him on the stairway. A judgment was rendered against the principal for his failure to have properly supervised the school. The Appellate Division had held that there was a question of fact presented whether he was negligent in failing to promulgate more adequate regulations for the safety of pupils. The teacher who exercised direct supervision over the class was exculpated from any charge of negligence by the Appellate Division. The proof had shown that the principal had held regular conference with his 34 teachers and laid down rules for egress and ingress of pupils, dismissal of classes and other matters. He had established a rule that the teacher was to supervise the entire dismissal of her class. He directed teachers to place themselves in strategic positions during dismissals and he had passed many other rules and regulations. In holding that from the evidence it seemed certain that the prin *573 cipal had exercised such general supervision as was possible, the court dismissed the complaint against him and said at page 96: “ Appellant could not personally attend to each class at the same time, nor was any such duty imposed upon him.”
However, while the principal in our case on appeal could not personally attend to each class, having been acquainted with this other student’s problem from its very inception and having reached the conclusion that she needed some sort of examination from the Bureau of Child Guidance and medical treatment, it was his responsibility to inform the substitute teacher thereof. His failure to do so constituted an act of negligence and the jury was under a duty to consider thoroughly his acts of omission or commission from the time that this other student became a pupil in his school.
In Graff v. Board of Educ. (supra) the judgment was reversed and the complaint dismissed. A high school student was struck in the eye by a rubber ball within the school area. The court said: u While the defendant is charged with the duty of providing for adequate supervision of activities within the school yard (Education Law, § 310, subd. 15, § 868; Collentine v. City of New York, 279 N. Y. 119; Augustine v. Town of Brant, 249 id. 198; Garber v. Central School District No. 1, 251 App. Div. 214), its obligation was fulfilled when it provided for adequate supervision in the person of one or more competent instructors. This it did.”
That is precisely what the principal in this case failed to do when he failed to advise the teacher of the vicious propensities of this other girl.
In May v. Board of Educ. (269 App. Div. 959, supra) an infant plaintiff was standing in the playground of the school premises when three boys without warning and without cause pulled him backward and threw him to the ground, causing him to fall on a clinker on the surface of the playground. The court, in dismissing the complaint in a 3 to 2 decision, said at page 959: ‘ ‘ The proximate cause of the accident was the unforeseen intervention of the three unknown boys and not the failure of defendant to maintain this playground in a reasonably safe condition.”
That decision was affirmed (295 N. Y. 948), but again there was a dissent by Judge Cokway, in which Judge Desmoud concurred.
In Abbott v. New York Public Library (supra) the plaintiff was injured by an assault by another visitor of whose dangerous tendencies the defendant had notice. The complaint was dismissed. The Appellate Division reversed and the court said at page 319: 1 ‘ Defendant was not an insurer of the safety of *574 persons lawfully using its library but it owed them the duty of ordinary care and reasonable supervision so that such patrons would not be unreasonably exposed to dangers including dangers known to defendant but not to its invitees. On the facts established by plaintiff, we think that varying inferences were possible with respect to defendant’s ability reasonably to anticipate the danger to be apprehended and its use of ordinary care in reasonably guarding against such danger; that the issue of defendant’s claimed negligence in the performance of such duty was an issue of fact to be determined by the jury on all the relevant facts and surrounding circumstances under a proper charge from the court; and that it was accordingly error for the court to dismiss the complaint at the close of plaintiff’s case.”
In Selleck v. Board of Educ. (supra) while the court found that the failure of the defendant to have moved for dismissal of the complaint at the close of the entire case constituted a concession that there was a question of fact, it nevertheless ruled that the plaintiff had made a fair case for the jury. It said at page 267: “ There was no proof in the present case of a dangerous condition of the school property but the jury might find that unrestricted bicycle riding on that part of the grounds where small pupils congregated created a dangerous situation. It is practically conceded that neither the board nor the principal made any rules or regulations relative thereto. In the absence of such rules and regulations the jury might also find that the supervision provided was entirely inadequate. Whether the failure of the defendants in these respects was a proximate cause of the accident is an issue over which reasonable minds might differ, and hence an issue of fact arose which was for the jury to resolve. So far as the issue of notice is concerned it was for the jury to say whether defendants in the light of all the circumstances should have known that a situation of some danger existed. ’ ’
In Wiener v. Board of Educ. (supra) one Blundo, had been barred from the classroom for a period of time because of a tendency to throw blackboard erasers. The defendant had knowledge of the prior incidents. For a month and a half Blundo was not permitted into the classroom until after the arrival of a teacher. Two weeks prior to the accident the requirement was relaxed. Nothing dangerous took place within the two-week period. Then the incident occurred. The court, in dismissing the complaint, said at page 935: ‘ ‘ The principal measure resorted to was that of keeping the pupil out of the school room until his teacher arrived. During the period of time that that measure was enforced no injuries occurred ¿ and *575 the sufficiency of the measure is therefore not causally connected with the plaintiff’s injury, and was not a material issue for the jury’s consideration. The material issue was whether or not it was reasonable, under the circumstances, for the teacher Daar to have permitted Blundo to return to the classroom after the latter had been excluded therefrom for a period of one and a half months, and in that respect the substance of the request at folio 553 should have been granted.” The case was sent back for a new trial.
Obviously in the Wiener ease the teacher, armed with knowledge of the prior misconduct of Blundo, the punishment meted out to him, his return to the classroom and the quiescent two weeks, could not be charged with negligence. His judgment told him that the punishment had been sufficient to quell Blundo and the quiescent two-week period was proof thereof. Therefore, having acted as a reasonable and prudent teacher should have acted under the circumstances, he could not be guilty of negligence because of the perpetration of an act which was unforeseeable.
In our present case, it was not the failure of the substitute teacher to do anything at the time which constitutes the crux of the cause of action but the failure of the principal to have done that which a reasonable and prudent principal should have done under the circumstances, namely, to have advised the substitute teacher of this child’s tendencies. It is not a matter of conjecture but a matter of inference of fact as to what that effect would have had upon the future events.
Nothing has been shown here that the substitute teacher was an incompetent teacher. On the contrary, her handling of the situation under the circumstances was admirable. Had she been apprised of the situation, she would have been in a position to decide what reasonable steps to take to have prevented any repetition of misbehavior. Not having been advised of the situation her failure to have done anything is not negligence.
In my opinion the failure of the principal to have exercised good discretion and prudence in telling her about the child was the proximate cause of the occurrence, and the jury was justified in bringing in a verdict in favor of the plaintiff.
A lessening of the strict rule of liability is evidenced in Vitagliano v. Board of Educ. (12 A D 2d 655, supra [decided 12/19/60 by the Appellate Division, 2d Dept.]). There a 13-year-old student was hit in the right eye by an eraser thrown by another pupil causing him to lose sight in that eye. The charge was that the defendant was liable because the accident was foreseeable and that what made it foreseeable were prior *576 similar occurrences of horseplay not identical in character to the event which caused the injury to the plaintiff. The evidence clearly sustained the fact that before the teacher arrived in the classroom the pupils were on many occasions unruly and guilty of throwing blackboard erasers around the room. At the time of the occurrence there is conflicting testimony in the record as to whether the teacher was or was not in the classroom. There was evidence in the record from which a jury could have been justified in finding that the teacher had come into the room while the eraser throwing was going on and had done nothing to stop it until the accident had occurred. While the memorandum fails to indicate the reasoning of the court in reaching the conclusion that the verdict was contrary to the weight of the evidence and required a new trial, the testimony appearing in the record throws some light on the reasons for the result. It may be noted that the act of sending it back for a new trial indicated that there were questions of fact to be decided therein. No disposition was made dismissing the complaint as a matter of law on the ground of nonforeseeability.
It appears to me from a reading of the record that the teacher having been present while the throwing was going on and having done nothing about it until the injury had occurred, it was properly held that the event which resulted in the injury was foreseeable and hence the defendant was liable in negligence. Had the act of throwing been spontaneous and complete in the one throwing, then probably the court would have followed its decision in the Bertola case and held that the act was unforeseeable and hence no negligence had been proven. Consequently, it can be seen that that case again stands on its own facts and is not applicable to the case now under consideration.
As can be seen from the foregoing, it is my opinion that liability on the part of the Board of Education was amply shown in the instant case based upon the premise that the principal had erred in having failed to instruct the substitute teacher concerning the known propensities of this assaultive student to commit harm upon other children. It is clear to me that the facts supporting such theory of liability were before the jury, as a study of the evidence shows. Such theory is supported by the allegations of paragraph “ Twelfth ” of the complaint which state: ‘ ‘ That the said occurrence * * ® was caused solely by reason of the negligence of the defendants, their agents, servants and/or employees * * ” in that the said defendants, their agents, servants and/or employees, upon information and belief, did enact such rules and regulations pertinent to disciplinary measures and failed to comply therewith, in that the *577 said defendants, their agents, servants and/or employees failed to properly supervise the classroom at the said time and place, in that the said defendants had permitted and acquiesced in the attack upon the infant plaintiff in that the said defendants knew or should have known or by reasonable diligence could have ascertained that the said *-was a student having vicious propensities and dangerous propensities and that she had received psychiatric treatment prior to this said occurrence and that the said *-had on prior occasions attacked other children, and in permitting the said *- to continue as a student in the said classroom without providing sufficient and proper supervision of the said classroom or making special provision for the attendance of the said *-in the said classroom, upon information and belief in employing inexperienced personnel to conduct and supervise the said classroom and in general failing to exercise due care, caution and prudence under the circumstances.”
Paragraph “ 4 ” of plaintiff’s bill of particulars, after substantially reiterating the foregoing, states as follows: “ and in permitting the said *-to continue as a student in the said classroom without providing sufficient and proper supervision of the said classroom or making special provision for the attendance of the said *-in the said classroom ”.
The charge incorporated those allegations. In the charge the court posed several questions, among which were: ‘ ‘ What did the Board of Education, through its agents, servants and employees, know at the time ? What should they have known in the exercise of reasonable care under all of the circumstances'? ”
Pursuant to a request by the plaintiff’s attorney the following was charged: “I respectfully ask your Honor to charge the jury that knowledge of this child’s propensities to the principal or to the teacher or other personnel of the school is knowledge to the defendant, the Board of Education.” The request was granted without exception.
The following request was also granted without exception: “ I respectfully ask your Honor to charge the jury that the failure of the Board of Education to act upon the recommendation of the principal early in February of 1955 that the child (name) be given certain examinations for a period of at least one month is one of the factors that the jury may consider in the broad overall picture of negligence.”
The court specifically refused to charge the following: “I further ask your Honor to charge the jury that if they find that *578 the teacher, after attempting to separate these children, then left the room leaving the infant plaintiff at the mercy of (name of other student), that the jury may consider this, as one of the factors.”
The defendant’s counsel took no exceptions to the charge but made several elementary requests. As a matter of fact, no point is made in the brief concerning the adequacy or inadequacy of the charge but solely the question as to whether a case was made out.
Under the circumstances, I feel that the issues were made known to the jury, the law fully explained to them and consequently their verdict is based upon the facts proven in this case.
The judgment should be affirmed, with costs.

 Name deleted from quoted portions of charge.