George Starke, J.
In this action recovery is sought for personal injuries inflicted upon the infant plaintiff by another classmate due to negligence of the school in failing to provide supervision in the classroom.
The pupils were required to report to their classrooms at 8:30 a.m. On the morning of April 22, 1958, the plaintiff and almost every other pupil in the class reported on time. There was no teacher present to supervise them. When the bell rang at 8:45 a.m. for the commencement of the class lessons, the teacher was still absent. About 10 minutes later, the incident occurred wherein plaintiff was stabbed in the hand by another boy. There still was no teacher present in the classroom. From 8:30 a.m. to 8:55 a.m. most of the boys indulged in horseplay and fighting with one another, and in running and chasing each other around the room. The boy who did the stabbing was seen wielding a knife for about 5 or 10 minutes prior to the actual stabbing.
There was a total lack of supervision in the classroom for a period of 25 minutes prior to the stabbing for which there was no provocation. Some slight evidence, not much, but some at least, was presented that the boy who did the stabbing was an unruly and mischievous boy and had been reprimanded previously by the teacher for misconduct. There was no proof whatever of a prior similar act.
Both sides rely on Ohman v. Board of Educ. of City of N. Y. (300 N. Y. 306) (citing Maurer v. Board of Educ. of City of N. Y., 294 N. Y. 672; Clark v. City of Buffalo, 288 N. Y. 62; Berner v. Board of Educ., 286 N. Y. 174; Graff v. Board of Educ., 258 App. Div. 813, affd. 283 N. Y. 574). The defendant also relies on the Clark case (supra) and on Kaufman v. City of New York (30 Misc 2d 285).
The defendant contends that mere lack of supervision in and of itself does not make the school liable when the act causing the injuries is that of an intervening party without any proof of a “ prior similar act ” or of knowledge of the boy’s “ vicious propensities ”; that even assuming, but not conceding, that the teacher was negligent in being absent from the classroom, it does not follow that the school is liable for the consequences of *743 an unforeseen act by a third party which hardly could have been anticipated in the reasonable exercise of the teacher’s legal duty towards the plaintiff; that the absence of the teacher was not the proximate cause of the injury which was not reasonably foreseeable and could have occurred even if the teacher had been in the room; and that whether or not the duty of supervision was breached is not the controlling issue, but that the issue is ‘ ‘ would the incident and injury have been prevented had a teacher been present? ”
It is true that in all of these cases, there was no supervision and that the plaintiff was not permitted to recover. However, the facts in those cases are readily distinguishable from the case at bar. In the Oilman case (supra) a pupil was struck in the eye by a lead pencil thrown by a classmate while the teacher was absent from the room. In the Maurer case (supra) the plaintiff was injured by having a finger stuck into his eye by another boy swimming in the same pool in the opposite direction, contrary to instructions, and no instructor was present. In the Clark case (supra) the plaintiff was struck in the eye by a piece of glass thrown by a boy, when there was no supervision. In the Kaufman case (supra) a boy sustained head injuries and died as a result of bumping heads with another boy in a basketball game in a college gymnasium and no instructor had been present in the room. In the Berner case (supra) the pupil’s eye was injured as she turned the corridor on her way to the classroom when one boy threw the ball to another boy, and there was no supervision of the children at the time of the occurrence. In the Graff case (supra) the pupil was injured by a ball thrown by one of the pupils while all the students were lawfully in the school yard during the lunch period but without any supervision.
It is easy to differentiate the facts in the case at bar by reason of the fact that the plaintiff was injured by a knife with a three-inch blade held in the hands of another pupil, and not by the tossing of an ordinary lead pencil (Oilman case, supra), a finger poked in a pupil’s eye while swimming (Maurer case), a thrown rubber ball (Berner and Graff eases), or the bumping of heads in a basketball game (Kaufman case). The defendant overlooks the fact that in the Ohman case (supra, p. 310) the court said: 11 nor can anyone seriously contend that a pencil in the hands of a school pupil is a dangerous instrmnentality.” And in the Graff case (supra, p. 575) the court said: “ in the light of the fact that the object which struck the plaintiff was a rubber ball, which was not shown to have been of an inherently dangerous nature, no negligence on the part of an instructor had been shown.”
*744 Quite the contrary here. Common sense dictates and one can seriously contend that a knife with a three-inch blade in the hands of a school pupil is per se a “ dangerous instrumentality.”
This leaves the Clark case {supra) open for discussion which the defendant urges is very similar to the case at bar. One may with reason argue that stones and small pieces of glass might under certain conditions be deemed a dangerous instrumentality, particularly when hurled. There the plaintiff was injured while there was no supervision when a classmate who had been wading in a pool with the plaintiff picked up several stones and small pieces of glass and threw them in the plaintiff’s direction, striking her in the eye with a piece of glass.
This brings up another important and distinguishing feature completely ignored by the defendant, namely — the time element. Was the third-party act a sudden impulsive, momentary or instantaneous one? Or, was the time factor such that sufficient time elapsed immediately prior to the incident which could have enabled a teacher, if he were present, to take some action to prevent the occurrence?
For in the Clark case (supra, p. 66) the court said: “ Harm came to the plaintiff only after the danger was created by the intervention of a third person, a mischievous boy who on the impulse of the moment — and which no prior conduct on his part or by the plaintiff gave warning — picked up stones and glass and threw them towards the plaintiff and her companions.” (Italics supplied.) The court further stated (p. 66): “ There is no evidence that prior to the accident the plaintiff, her two companions and the boy who threw the glass were quarrelsome; nor is there any proof that anything had occurred in their play either in the wading pool or elsewhere from which the most vigilant lifeguard or attendant could have anticipated the unprovoked conduct of the boy whose sudden and impulsive act brought injury to the plaintiff.” (Italics ours.)
In the Ohman case {supra, p. 309) we have the sudden throwing of the pencil, an act which “ could hardly have been contemplated in the reasonable exercise of the teacher’s legal duty toward the plaintiff.” The pencil had been tossed by a classmate in the direction of a third classmate with the remark “Here is your pencil” (p. 308). The boy for whom it was intended ducked and the pencil hit the plaintiff who was standing directly behind him.
In the Kaufman case (supra, p. 286) the court held that the bumping of heads in a basketball game was a hazard and that the absence of instructors did not make the school liable on the theory of failure to supervise, saying: “ If the instructor were *745 present and watching and supervising the game, he could not have stopped the boys from bumping their heads together
In Wilber v. City of Binghamton (271 App. Div. 402, affd. 296 N. Y. 950) a child was struck in the eye by a stone batted by another pupil during recess in the school playground, and there was a claim of lack of adequate supervision. In dismissing the complaint, the court stressed the “ time element ”— the warning period, saying (p. 405): “In order to sustain any recovery, it must be based upon the additional finding that such failure [to provide adequate protection] was the proximate cause of the accident. There were no dangerous or defective conditions. There is no evidence of the length of time Bagar had been batting stones or that the accident would not have happened if there had been another teacher in attendance.” (Italics supplied.)
In Ferraro v. Board of Educ. of City of N. Y. (32 Misc 2d 563, affd. 14 A D 2d 815) Justice Di Giovauua made a comprehensive and exhaustive review of numerous school cases in writing the decision on behalf of the Appellate Term, Second Department, dealing with whether a school principal was negligent in failing to alert a substitute teacher, who had charge of the class, concerning known misconduct of a student who had assaulted a fellow pupil in the classroom. I should like to quote from page 576, wherein he refers to the time element and the question of “ spontaneity ” in his excellent analysis of the case of Vitagliano v. Board of Educ. of City of N. Y. (12 A D 2d 655) where a student was hit in the eye by an eraser thrown by another pupil in the classroom: “ There was evidence in the record from which a jury could have been justified in finding that the teacher had come into the room while the eraser throwing was going on and had done nothing to stop it until the accident had occurred. # * * It appears to me from a reading of the record that the teacher having been present while the throwing was going on and having done nothing about it until the injury had occurred, it was properly held that the event which resulted in the injury was foreseeable and hence the defendant was liable in negligence. Had the act of throwing been spontaneous and complete in the one throiving, then probably the court would have followed the decision in the Bertola case and held that the act was unforeseeable and hence no negligence had been proven. ’ ’ (Italics supplied.)
Whereas, in the case at bar, the intervening act was not a momentary, sudden, impulsive or instantaneous one without prior warning. Here the boy had been brandishing the knife for at least 5 or 10 minutes immediately before the stabbing. *746 This case therefore does possess the time element — the warning period of 5 or 10 minutes before the act. The wielding of the knife during that period was visibly open to the view of every pupil and would have been visible to a teacher present in the classroom. The teacher would have been in a position to halt the imminent threat of danger and injury. If the teacher had been present, it would have been his duty to take the knife from the boy. He could reasonably foresee that leaving the knife in the boy’s possession might lead to the boy injuring himself or inflicting injury to a classmate. Thus, the presence of a teacher in the classroom was vital. His presence might have prevented the stabbing. The pupils were not afforded the smallest amount of protection since the teacher was not present to take any steps to prevent the occurrence.
The principle of 1 £ one free bite ’ ’ is not applicable. Prior knowledge of ££ vicious propensities” is not a necessary element. Nor is proof of a prior similar act. What is meant by ‘‘ prior conduct ” in the Ohman, Clark, Wilber and Vitagliano cases (supra) is the conduct immediately preceding the injurious act which would give reasonable notice to the teacher that harm may be anticipated, if a teacher were present and not blind. It means that the teacher would have sufficient time within which to take steps to protect the pupils and prevent the occurrence of the incident causing the injury. What happened immediately before the incident is the test as to whether the act was an event£ £ which could occur equally as well in the presence of the teacher as during his absence.” (Ohman case, supra, p. 310.)
Whether the act was done intentionally or accidentally does not matter. What matters is whether a teacher, if present, could have anticipated the act in the reasonable exercise of his duty toward the plaintiff (Oilman case, supra), and whether a teacher could have anticipated the unprovoked conduct of a boy whose act was not sudden and impulsive (Claris case, supra).
The court therefore holds that the teacher’s absence from the classroom was the proximate cause of the injuries resulting from the stabbing of the plaintiff by a classmate. There was legal causation between the failure to provide supervision and the injury to the plaintiff. It is true that the efficient cause of the plaintiff’s injury was the wrongful act of an intervening third party, a mischievous boy. However, under all the circumstances here — the dangerous instrumentality, the warning period of 5 to 10 minutes— the stabbing of the plaintiff was an act which could have been reasonably foreseen by a teacher if he were present in the classroom. It was an act which could easily been anticipated in the reasonable exercise of the teacher’s *747 legal duty to each classmate. The third-party act was not an event which could occur equally as well in the presence of the teacher as during his absence. The act producing the injury might have been prevented by the presence of a teacher.
Failure to provide adequate supervision was the proximate cause of the stabbing, and adequate supervision might have prevented the occurrence (Ohman case, supra; Silverman v. Board of Educ. of City of N. Y., 28 Misc 2d 20, affd. 15 A D 2d 810; Lopez v. City of New York, 4 A D 2d 48, affd. 4 N Y 2d 738; Ferrill v. Board of Educ., 6 A D 2d 690; Rivera v. Board of Educ. of City of N. Y., 11 A D 2d 7; De Benedittis v. Board of Educ. of City of N. Y., 271 App. Div. 886). The consequences resulting here seem more imminent when the supervisor has abandoned his post, or in any event, a jury was free to so find (Lopez case, supra). Consequently, the school is liable for the consequences of a foreseeable act by a third party (Ohman case, supra).
Where harmful consequences are brought about by intervening and independent forces the operation of which might have been reasonably foreseen, there is no break in the chain of causation of such character as to relieve the actor from liability (Carlock v. Westchester Light. Co., 268 N. Y. 345, 350). The misdeed of respondent’s employee was not obliterated by the concurrent negligence of another (Lopez case, supra). Several acts may operate to produce a result, each constituting part of the proximate cause (Carlock and Lopez cases, supra).
The plaintiff is righthanded and suffered an injury to his right hand requiring four sutures. He was disabled for a period of about six weeks and sustained a permanent scar on the outer rim of his palm between the thumb and index finger. There was testimony that after the injury he stopped taking piano lessons. It is not known how well he played before the injury and whether a budding genius was nipped in the bud. In any event, this is one time the plaintiff could not play the piano after the accident. However, this was only during the six weeks’ disability period. There was nothing to prevent him from resuming his lessons thereafter. The court would respectfully suggest to his parents that the boy’s love for the piano was not strong enough to overcome his distaste for piano lessons. It may very well be that he has used the incident as an excuse for not resuming his lessons. In evaluating the damages, the court cannot grant any allowance for the fact that his desires to continue with the lessons was weaker than his love for the piano. While there appears to be no great burning desire to continue his piano playing, let us hope that if any *748 spark is left it will be rekindled before he is 90 so that his parents may reap the pleasure.
Judgment is hereby rendered in favor of the infant plaintiff for the sum of $1,500 for his injuries and pain and suffering, and judgment for the father in the sum of $100 for reimbursement of medical expenses, etc.