José Ramón Cruz Costales, etc., Plaintiff and Appellee, *v.* Commonwealth of Puerto Rico et al., Defendants and Appellants.

No. R-62-249.     Decided September 30, 1963.

*J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for appellants. *Práxedes Alvarez Leandri* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Plaintiff, a youngster 15 years of age, was a student of José González Ginorio School located in the ward of Romero in Villalba, Puerto Rico, and at the time of the occurrence he was attending a manual-training class supposedly under the direction and supervision of the industrial arts teacher of that school, Luis Ríos, codefendant herein. Ríos was never summoned nor brought to trial. During the manual-training class the teacher absented himself from the classroom without any apparent reason and without his absence having been justified nor accounted for in any manner whatever by the Commonwealth, codefendant herein. (We shall refer hereinafter to this codefendant as the defendant.)

While the students were in the classroom and during the teacher's absence, an individual, Juan Leonor Landrau, who was not a student, entered the classroom and, picking up a machete that was there, said that he was mentally deranged and that he had the courage to slash the student Ángel Marín who was next to him. In the meantime plaintiff tried to pick up a folding rule which was lying on a nearby table and just then, without any provocation at all, Landrau cut him with the machete. According to finding of fact No. 6 of the Superior Court, "the minor suffered an incised wound on the back of the right hand which penetrated the tendons of the third and fourth fingers. That day he underwent tenorraphy. A cast was applied on the anterior part of the forearm and arm. He did not suffer any fracture or dislocation as shown by the plate taken. The cast was removed on June 14 and he was referred to physiotherapy for exercise and immersion baths. He was discharged on July 12.

(The facts occurred on May 18, 1961.) The wound was not severe and the minor has no incapacity in the normal function."

In its finding of fact No. 5, which is important in the decision of the case, the trial court says: "At the time of the occurrence Ríos, the teacher, was not in the room, having absented himself for more than half an hour. Defendant has not accounted for his absence. After the incident he and another student took the aggressor out of the room."

The Superior Court ordered defendant to pay $2,500 to plaintiff with costs and without attorney's fees. The only error assigned by defendant is that the court erred "in concluding that the absence from the classroom of teacher Ríos constitutes negligence in the discharge of his duties, and that such negligence was the cause of the attack."

In an annotation published as recently as last year, entitled *"Tort Liability of Public Schools and Institutions of Higher Learning,"* 86 A.L.R.2d 489, it is said at p. 501, ab initio, that there is no doubt that a majority of jurisdictions in the United States still maintain that the state and its political subdivisions are immune from tort claims based on death, injury or damages caused in connection with schools and institutions of higher learning. As is known, in Puerto Rico the situation is different because the Claims and Suits Against the Commonwealth Act, No. 104 of June 29, 1955, 32 L.P.R.A. § 3077, authorizes actions against the Commonwealth pursuant to the terms thereof.[1]

In support of its position defendant alleges that only when the damage suffered could be reasonably foreseen in carrying out defendant's act, such act becomes the legal

---

[1] There existed Act No. 76 of April 13, 1916, 32 L.P.R.A. § 3061, which also authorized actions against the State, although its scope was more limited than those of the present Act, and which was repealed and substituted by Act No. 104 of 1955, *supra.*

cause of the damage, *Colón* v. *Shell Co.*, 55 P.R.R. 575 (1939); that defendant is not liable when there arises a remote and improbable intervening cause which defendant could not reasonably foresee; that the school authorities are not insurers of the students, *Whitfield* v. *East Baton Rouge Parrish School Board*, 43 So.2d 47 (1949); *Taylor* v. *Oakland High*, 83 P.2d 948 (1938); *Walter* v. *Everett School District*, 79 P.2d 689 (1938); that the supervisory duty of school authorities comprises only the exercise of that care which a reasonable and prudent person would exercise under the same or similar circumstances, *Briscoe* v. *School District*, 201 P.2d 697 (1949); *Leibowitz* v. *Board of Education*, 112 N.Y.S.2d 698 (1952); *Buzard* v. *East Lake School District*, 93 P.2d 233 (1939); that the mere fact of lack of supervision on the part of the teachers does not make the state liable for damages, *Ohman* v. *Board of Education*, 90 N.E.2d 474 (1949); *Maurer* v. *Board of Education*, 60 N.E.2d 759 (1945); *Clark* v. *City*, 41 N.E.2d 459 (1942); *Berner* v. *Board of Education*, 36 N.E.2d 100 (1941); *Graff* v. *Board of Education*, 15 N.Y.S.2d 941 (1939); and that in the instant case the school authorities could not have anticipated the unlawful and unexpected entry into the classroom of a mentally deranged person or of a criminal.

Defendant is correct in its claim, in abstract form, of those general principles. They are also stated in *Rivera* v. *People*, 76 P.R.R. 378 (1954), in *Ginés* v. *Aqueduct and Sewer Authority*, 86 P.R.R. 490 (1962), and in *Rivera* v. *Amador*, 86 P.R.R. 812 (1962).

However, let us see the application of those principles to the specific case. Defendant admits in its well-documented and careful memorandum that "it is well known that there is no fixed rule of thumb for determining when the causes of an accident are proximate and when they are remote" (as stated by Prosser, *infra* at p. 267, we are dealing with

a problem of responsibility and not physics), and he admits, we said, that "each case must be decided by taking into consideration the facts and circumstances thereof," *Andino* v. *Central Victoria, Inc.*, 57 P.R.R. 301, 308 (1940). Thus, for example, this Court, through the same Justice who delivered the opinion in *Rivera* v. *People, supra*, Mr. Justice Pérez Pimentel, reiterates in *Ginés* v. *Aqueduct and Sewer Authority, supra*, that "a defendant will ordinarily be relieved of liability by an unforeseeable and abnormal intervening cause which produces a result which could not have been foreseen," but upon confronting the circumstances attendant upon the specific case[2] he holds defendant liable and says:

"Of course, we would have to relieve defendant from liability if we accept its argument that 'it was impossible to foresee the dangerous condition in which plaintiff found himself.' But the rule of foreseeability does not mean that the precise risk or the exact result which was encountered should have been foreseen. The essential factor is to be under the duty to foresee, in a general way, consequences of a particular type. It is no defense to allege that the precise course or the full extent of the consequences could not be foreseen, the consequences being of such kind, which in fact happened.

".    .    .    .    .    .    .    .

"It is further well settled that liability does not depend alone upon whether, in the exercise of reasonable diligence, the defendant could foresee or ought to have foreseen, the very injury complained of, but the party charged with negligence may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission. It is therefore unnecessary that the defendant should have anticipated the very injury com-

---

[2] In the case of Ginés plaintiff tripped over a water meter owned by defendant which protruded seven inches above the ground while walking backwards fleeing from an aggressor who was pursuing him with a knife in his hand.

plained ·of or anticipated that it would have happened in the exact manner that it did."[3]

We will refer to those cases which seemingly support defendant's position because they differ from the case at bar. In *Whitfield, supra,* a first-grade pupil, seven years old, drowned when he fell in a ditch adjoining the boundary of the school grounds. The ditch was 150 feet from the school building and there was no fence. Since the ditch was a drainage ditch, some times there was little water, but at other times there was much. The court held that the school authorities were not responsible because the children had been told to stay away from the ditch, and because when the accident occurred there were three teachers during recess watching over the children. It is not for us to decide this case, but we cannot but reflect on how effective could be the warning to stay away from the ditch given to first-grade pupils. Furthermore, although there were three teachers watching over at recess time (normally there were two), at that hour there were 300 or 400 children playing in the school yard. In *Taylor, supra,* a girl sustained injuries when struck on school grounds. The issue was whether the complaint stated a cause of action. The trial court had decided that it did not and the court of appeals held otherwise. At p. 951 it was said that the holding does not make school authorities insurers of the children, and added that the evidence would establish whether or not defendants were negligent. In *Walter, supra,* a boy sustained injuries in a gymnastics class. The teacher was present, which distinguishes it from our case, but also the teacher in question was an employee of the Federal Government, and defendants, the local school authorities, had no connection with that

---

[3] On the doctrine of foreseeability of the damage and on proximate and intervening cause, the discussion by Prosser in his Law of Torts 252 *et seq.* (2d ed. 1955), is magnificent. See, also, 2 Harper & James, The Law of Torts 1134 *et seq.,* § 20.5 (1956 ed.) ; and Restatement, *Torts* §§ 430–49 (1934).

class or with the teacher. The court ruled in favor of defendants.

In *Ohman* v. *Board of Education, supra,* the accident occurred inside the classroom. A pupil tossed a pencil at another boy, the latter stepped aside and the pencil hit another boy in the eye injuring it permanently. Although the teacher was not present, the court rendered judgment against plaintiff on the ground that the teacher's absence from the classroom was not the proximate cause of the accident, but that it was caused by the unforeseen act of the pupil. The court reasoned that even if the teacher had been present she could not have prevented such sudden and unforeseeable act. Unlike the case at bar, in *Ohman* the temporary absence of the teacher from the classroom was accounted for and justified; she was storing school supplies in a corridor closet of the building. In *Maurer* v. *Board of Education, supra,* the accident occurred in a properly supervised swimming pool. In *Clerk* v. *City, supra,* the accident occurred in a municipal park and the municipality proved that it was diligent in maintaining personnel in charge of the swimming pool. This, like the case of *Maurer,* is quite different from our case. In *Berner, supra,* the injury was caused by a rubber ball thrown by another pupil while playing in the corridor of the school building. The court held that the school authorities had not been negligent and that the act, common among children of that age, was not dangerous per se. In *Graff, supra,* a boy was struck in an eye when the teacher threw a ball at him while playing school games. The court found that such activity was not inherently dangerous and that no negligence had been shown.

In *Reithardt* v. *Board of Education,* 111 P.2d 440 (1941), a student sustained injuries when another student caused her to fall from the ledge of the window. The accident occurred in a room while the students were waiting for classes to begin. The court held that the accident was due to the

negligent action of the second girl (they were high-school students), and that the school authorities had not been negligent. In *Frace* v. *Long Beach City High School District*, 137 P.2d 60 (1943), a high-school student suffered injuries by the explosion of chemicals given him by other fellow students and with which he was attempting to perform experiments. This occurred in the garage of the home of one of the students. The chemicals had been stolen by one of the students from a high-school room. Naturally, the court rendered judgment for the school.

■ As is to be expected, the case law on this matter is abundant, since generally children are impulsive and not too cautious, and it is natural that in groups of hundreds and thousands of students who attend schools there should occur unfortunate accidents, some of which may be anticipated and avoided by the teachers; but others are, unfortunately, impossible to be anticipated and avoided. The codes, the case law and the authors lay down certain reasonable and useful rules for the solution of cases, but this is a field in which the law cannot be stable and static and the courts are bound to decide each case on its particular circumstances. For example, the rule is well-settled that teachers should exercise toward the children the care which a reasonable and prudent person would exercise—it has been held that the relation of teacher and pupil is, in a limited sense, one "in loco parentis," *Gaincott* v. *Davis*, 275 N.W. 229 (1937) —but it may be readily seen that what is reasonable and prudent in relation to first-grade pupils is not necessarily so in relation to eighth-grade or high-school pupils. The multitude of cases and the infinite possible circumstances have produced and will produce dissimilar case law. Unlike the cases cited above, in others the courts have awarded compensation, *La Valley* v. *Stanford*, 70 N.Y.S.2d 460 (1947); *Brooks* v. *Jacobs*, 31 A.2d 414 (1943); *Gaincott* v. *Davis*, *supra*; *Ferraro* v. *Board of Education*, 212 N.Y.S.2d 615

(1961) ; and *Christofides* v. *Hellenic Eastern Orthodox Christian Church*, 227 N.Y.S.2d 946 (1962).

In the most recent cases such as that of *Ferraro, supra,* and *Christofides, supra,* the courts have required a greater degree of care on the part of the schools and the teachers towards children of tender age, especially when they are in situations in which they are supposed to be under the surveillance of their teachers, as when they are in the classrooms and engaged in activities under the direction or supervision of the teachers. It is natural that it be so in view of the present jurisprudential tendency and the doctrine in the field of damages. See the chapter entitled "Torts and Insurance" by Friedmann, Law in a Changing Society 126 *et seq.* (London, Stevens & Sons, Ltd., 1959).

We are deciding in favor of plaintiff and we will explain ourselves, but first we wish to comment on the case of *Christofides, supra,* because in a way it is very similar to the case at bar and because in both cases the time element (the time available during which the damage could have been prevented had the teacher been present), coupled with the teacher's unjustified absence from the classroom, produce the legal cause of the damage. In the case to which we refer the pupils reported in time to the classroom, but the teacher was not present. As is customary in those cases, the children started playing and running around the room, a situation which lasted about a quarter of an hour. We do not know whether intentionally or accidentally, one pupil cut another with a knife. The evidence showed that the pupil with the knife had been wielding it in the classroom for about five or ten minutes. In deciding for plaintiff, the court reasoned that if the teacher had been present in the room he would have realized the danger that while the children were playing and running around the room one was wielding a knife, and in the reasonable exercise of his duty he would have prevented it. In other words, upon realizing the dangerous

situation it is reasonable to assume that the teacher in the performance of his duty would have taken the knife from the child or ordered him to put it away, and would not have allowed the child to continue his dangerous play for about five or ten minutes. The court found that there existed relation between the lack of supervision of the children due to the teacher's absence from the classroom and the injury sustained by plaintiff. Although the proximate cause of the damage was the act of an intervening party (the child with the knife), the legal cause lay in the consistent negligence in permitting the children to be in the classroom unsupervised.

■ In the case at bar, as in that which we have just commented upon, it must be conceded that the intervening cause was unforeseeable and unusual. That circumstance within another set of facts would have certainly relieved defendant from fault, but we believe that the legal cause of the damage was the absence of the teacher from the classroom, which was never accounted for, because if he had been present it is most likely that he could have prevented the tortious act since, in the first place, the presence of a male teacher in the classroom possibly would have intimidated the intruder and the latter could not have cut the minor. Furthermore, since the intruder threatened the students for a few minutes during that time, the teacher, being more matured than the children, probably would have handled the situation in such a way as to prevent the injury. At least the teacher would not have permitted the injured minor to go near the threatening intruder. That none of this is impossible is shown by the established fact that after the intruder cut plaintiff the teacher (who we must assume returned to the room) and another student took the intruder out of the room. We conclude that, as in *Christofides, supra,* the teacher's absence was the legal cause of the damage

because the action of the intervening third party (the intruder in this case) was not sudden and unforeseeable (as was the case in *Ohman, supra*), but that there was sufficient time available during which the teacher could have prevented the injury had he been present. As is known, there are circumstances in which the intervening cause relieves defendant from liability and there are also circumstances in which it does not. See, on the matter, the discussions cited above by Prosser and Harper & James. It is not unreasonable to expect that not only the students must be in the room during school hours, but also the teachers.

Of course, we are not opening the door so that the parents of 593,245 children in the public schools and 52,383 children in the private schools of Puerto Rico[4] may seek and obtain judgment for every excoriation or contusion received by children while playing. That is part of the price paid for being young. To do otherwise would endanger the public and private educational system, and we have no doubt that the educational system is more important and necessary than the desire of persons to obtain compensatory judgments.

It is necessary to take into consideration the generic and the individual elements of each case. As explained by Castán (in his excellent book *La Formulación Judicial del Derecho* 131, Editorial Reus, Madrid, 1954), and Legaz (*Filosofía del Derecho* 464, Editorial Bosch, Barcelona, 1953), every case is individual and has something that cannot be applied to the others, making it necessary to bear in mind its individual circumstances and elements. "Where the typical prevails over the individual—writes Legaz—there is no other possible nor more secure means of being fair, and also equitable, than to put in practice the equitable criterion provided in the legal system. However, if even within a typical series

---

[4] Statistical Year Book of Puerto Rico, 1960, p. 41, published by the Planning Board of Puerto Rico.

of cases the individual surpasses the generic, then the same justice requires the practice of equity, that is, the nonapplication of the logical, generic and abstract scheme of the norm, but rather a measure commensurate with those individual elements, for otherwise it would fail equity and to fail equity would be to fail justice, since the dissimilar would be treated equally and the dissimilar must be treated unequally." For another excellent discussion, in addition to the book by Castán cited above, on what professor G. W. Paton, Jurisprudence 155 (2d ed. 1951, Oxford) termed properly the agony of decision, see Pound, Law Finding Through Experience and Reason, U. of Ga. Press, 1960.

The judgment rendered in this case by the Superior Court, Ponce Part, on September 6, 1962, will be affirmed.