José Ramón Cruz Costales, etc., demandante y recurrido, v. Estado Libre Asociado de Puerto Rico y Luis Ríos, demandados y recurrentes.

*Número:* R-62-249      *Resuelto:* 30 de septiembre de 1963

*J. B. Fernández Badillo, Procurador General, y Peter Ortiz, Procurador General Auxiliar,* abogados de los recurrentes; *Práxedes Alvarez Leandri,* abogado del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

El Juez Asociado Señor Rigau emitió la opinión del Tribunal.

El demandante, joven de 15 años, era alumno de la Escuela José González Ginorio, sita en el Barrio Rómero en Villalba, Puerto Rico y al ocurrir los hechos asistía a la clase de carpintería supuestamente bajo la dirección y supervisión del maestro de Artes Industriales de dicha escuela, el codemandado Luis Ríos. Ríos nunca fue emplazado ni traído al pleito. Durante el curso de la clase de carpintería el maestro se ausentó del salón de clases sin causa aparente para ello y sin que su ausencia fuese justificada o explicada en modo alguno por el codemandado, el Estado Libre Asociado. (Nos referire-

mos de aquí en adelante a este codemandado como el demandado.)

Estando los estudiantes en el salón de clases, y el maestro ausente, entró en el salón el individuo Juan Leonor Landrau, quien no era estudiante, y cogiendo un machete que allí había expresó que era medio loco y que se atrevía darle unos tajos al estudiante Angel Marín que estaba allí al lado. Mientras eso ocurría el demandante fue a coger un metro que estaba sobre una mesa cercana y en ese momento, sin que mediara provocación alguna, Landrau lo cortó con el machete. Según la conclusión de hecho número 6 del Tribunal Superior "el menor sufrió una herida incisa al dorso de la mano derecha que le cogió los tendones de los dedos tercero y cuarto de la mano. Ese día se le practicó una tenorrafia. Le pusieron yeso en la parte anterior del antebrazo y mano. No hubo fractura ni dislocación según demostró la placa tomada. El 14 de junio se le quitó el yeso y se envió a fisioterapia para ejercicios y baños de inmersión. El 12 de julio fue dado de alta. (Los hechos ocurrieron el 18 de mayo de 1961.) La herida no fue grave y el menor ha quedado sin incapacidad en la función normal."

En su conclusión de hecho número 5, importante para la solución del caso, el tribunal de instancia expresa: "En el momento de la agresión el profesor, Sr. Ríos no estaba en el salón el cual había abandonado hacía más de media hora. Su ausencia no ha sido explicada por el demandado. Después del incidente él y otro estudiante sacaron al agresor del salón."

El Tribunal Superior condenó al demandado a pagar al demandante $2,500.00 con costas y sin honorarios de abogado. Señala como único error el demandado que erró el tribunal "al concluir que la ausencia del salón de clases del profesor Ríos constituye negligencia en el desempeño de sus deberes cuya negligencia fue la causa de la agresión."

En una Anotación publicada tan recientemente como el año pasado, titulada *"Responsabilidad Civil de las Escuelas*

*Públicas e Instituciones de Enseñanza Superior"* (Tort Liability of Public Schools and Institutions of Higher Learning), 86 A.L.R.2d 489, se dice a la pág. 501 *ab initio*, que no hay duda que todavía la mayoría de las jurisdicciones de los Estados Unidos sostienen que el Estado y sus subdivisiones políticas son inmunes contra demandas por daños y perjuicios por muertes, lesiones o daños causados en conexión con escuelas e instituciones de enseñanza superior. Como es sabido, en Puerto Rico la situación es distinta pues la Ley de Reclamaciones y Demandas Contra el Estado, Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. sec. 3077, autoriza a demandar al Estado a tenor con los términos de la misma. ([1])

En apoyo de su posición el demandado nos señala que es sólo cuando el daño sufrido ha podido razonablemente preverse al realizarse el acto del demandado, que tal acto es la causa legal del daño, *Colón* v. *Shell*, 55 D.P.R. 592 (1939); que el demandado no es responsable cuando surge una causa interventora remota e improbable que el demandado no podía razonablemente prever; que las autoridades escolares no son aseguradoras de los estudiantes, *Whitfield* v. *East Baton Rouge Parrish School Board*, 43 So.2d 47 (1949); *Taylor* v. *Oakland High*, 83 P.2d 948 (1938); *Walter* v. *Everett School District*, 79 P.2d 689 (1938); que el deber de supervisión de las autoridades escolares sólo comprende el ejercicio de aquel cuidado que una persona razonable y prudente ejercitaría bajo las mismas o similares circunstancias, *Briscoe* v. *School District*, 201 P.2d 697 (1949); *Leibowitz* v. *Board of Education*, 112 N.Y.S.2d 698 (1952); *Buzard* v. *East Lake School District*, 93 P.2d 233 (1939); que el mero hecho de falta de supervisión de parte de los maestros no hace responsable en daños y perjuicios al Estado, *Ohman* v. *Board of Education*, 90 N.E.2d 474 (1949); *Maurer* v. *Board of Education*, 60 N.E.2d 759

---

([1]) Existía la Ley Núm. 76 de 13 de abril de 1916, 32 L.P.R.A. sec. 3061, que también admitía demandas contra el Estado, aunque de alcances más limitados que los de la ley vigente, y la cual quedó derogada y sustituida por la citada Ley Núm. 104 de 1955.

(1945); *Clark* v. *City,* 41 N.E.2d 459 (1942); *Berner* v. *Board of Education,* 36 N.E.2d 100 (1941); *Graff* v. *Board of Education,* 15 N.Y.S.2d 941 (1939); y que en este caso las autoridades escolares no podían haber previsto la entrada ilegal e inesperada de un enajenado mental o de un criminal al salón de clases.

Está en lo correcto el demandado en su exposición, así en abstracto, de esos principios generales. También se hallan expresados en *Rivera* v. *Pueblo,* 76 D.P.R. 404 (1954), en *Ginés Meléndez* v. *Autoridad de Acueductos,* 86 D.P.R. 518 (1962), y en *Rivera Matos* v. *Amador,* 86 D.P.R. 856 (1962).

Veamos, sin embargo, la aplicación de esos principios al caso específico. Reconoce el demandado en su bien documentado y cuidadoso memorándum que "es bien sabido que no hay regla exacta para determinar cuando las causas de un accidente son próximas y cuando son remotas" (Como señala Prosser, infra, pág. 267, se trata de un problema de responsabilidad y no de un problema de física) y reconoce, decíamos, que "cada caso debe ser resuelto tomando en consideración sus hechos y circunstancias especiales", *Andino* v. *Central Victoria,* 57 D.P.R. 310, 318 (1940). Así, por ejemplo, este Tribunal por voz del mismo magistrado que emitió la opinión en el caso de *Rivera* v. *Pueblo,* supra, el Sr. Juez Asociado Pérez Pimentel, reitera en *Ginés Meléndez* v. *Autoridad,* supra, que "como principio general, un demandado será relevado de responsabilidad por una causa interventora imprevisible y anormal que produce un resultado que no pudo ser previsto" pero al enfrentarse con las circunstancias propias del caso específico (²) responsabiliza a la demandada y expresa:

"Claro está, tendríamos que exonerar de responsabilidad a la demandada si aceptamos su argumento de que a ella 'Le era

---

(²) En este caso de *Ginés* el demandante tropezó con un contador de agua propiedad de la demandada que sobresalía 7 pulgadas del piso, mientras caminaba hacia atrás huyendo de un agresor que lo perseguía cuchilla en mano.

imposible prever la condición peligrosa en la cual se encontró la parte demandante.' Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrostradas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase. No es defensa alegar que no se pudo prever el curso preciso o toda la extensión de las consecuencias, siendo de esa clase, que como cuestión de hecho, ocurrieron.

"Se ha sostenido además que la responsabilidad no depende de si en el ejercicio de razonable diligencia, el demandado previó o debió prever, el daño específico reclamado, pero la parte acusada de negligente puede ser responsable de cualquier cosa que después de completado el daño, aparezca ser una consecuencia natural y probable de su acto u omisión. Es por tanto innecesario que el demandado haya anticipado el daño específico imputádole o que haya anticipado que dicho daño iba a ocurrir en la form precisa que ocurrió." ([3])

Nos referiremos a los casos que parecen sostener la posición del demandado porque los mismos son diferentes del caso de autos. En el caso de *Whitfield*, supra, un niño de primer grado, de 7 años de edad, se ahogó al caerse en una zanja que servía de límite al patio de la escuela. La zanja estaba a 150 piés del edificio de la escuela y no había verja. Como la zanja era de desagüe a veces tenía poca agua pero a veces tenía mucha. El tribunal declaró que las autoridades escolares no eran responsables porque a los niños se les había prohibido acercarse a la zanja y porque cuando ocurrió el accidente, a la hora del recreo, había 3 profesoras al cuidado de los niños. No nos toca a nosotros resolver este caso pero no podemos dejar de reflexionar sobre cuán efectiva podría ser la instrucción de no acercarse a la zanja dada a niños de primer grado. Además,

---

([3]) Sobre la doctrina de la previsibilidad del daño y sobre causa próxima y causa interventora es muy lúcida la discusión de Prosser en su *Law of Torts*, 2da. ed. (1955) págs. 252 y ss. V. además 2 Harper & James, *The Law of Torts*, Sec. 20.5, págs. 1134 y ss. (ed. 1956) y el *Restatement*, *Torts* (1934) Secs. 430–449.

aunque había 3 profesoras vigilando el recreo (normalmente se utilizaban 2) a esa hora había 300 ó 400 niños jugando en el patio de la escuela. En el caso de *Taylor*, supra, una niña fue estropeada en el patio de la escuela por un camión. Lo que estaba en controversia era si la demanda aducía causa de acción. El tribunal inferior había resuelto que no la aducía y el tribunal apelativo resolvió lo contrario. A la pág. 951 se dijo que la decisión no quería decir que las autoridades escolares eran aseguradoras de los niños y añadió que la evidencia demostraría si hubo o no negligencia de parte de los demandados. En el caso de *Walter*, supra, un niño se lesionó en una clase de gimnasia. El maestro estaba presente, lo cual le distingue de nuestro caso, pero además el maestro en cuestión era un empleado del Gobierno Federal y las autoridades escolares locales demandadas no tenían relación alguna con esa clase ni con el profesor. El tribunal falló a favor de los demandados.

En *Ohman* v. *Board of Education*, supra, el accidente ocurrió dentro del salón de clases. Un niño le tiró con un lápiz a otro, éste se bajó y el lápiz fue a darle en un ojo a otro niño destruyéndoselo. Aunque la maestra no estaba presente el tribunal falló contra el demandante porque entendió que la ausencia de la maestra del salón de clases no fue la causa próxima del accidente sino que éste fue ocasionado por la acción imprudente del niño. Razonó el tribunal que aunque la maestra hubiese estado presente no hubiese podido evitar ese acto súbito e imprevisible. Contrario al caso de autos en este caso de *Ohman* la ausencia temporera de la maestra del salón de clases fue explicada y justificada; ella se encontraba en una alacena situada en el corredor del edificio guardando un material escolar. En el caso de *Maurer* v. *Board of Education*, supra, el accidente ocurrió en una piscina de natación en donde había adecuada supervisión. En *Clark* v. *City*, supra, el accidente ocurrió en un parque municipal y el municipio probó que era diligente al mantener personal a cargo de la limpieza

de la piscina. Éste, igual que el caso de *Maurer*, es un caso muy distinto al nuestro. En *Berner*, supra, la lesión fue causada por una bola de goma que otro estudiante tiró mientras estaban jugando en el corredor del edificio escolar. El tribunal encontró que las autoridades escolares no habían incurrido en negligencia y que el acto, común entre niños de esa edad, no era peligroso *per se*. En el caso de *Graff*, supra, un niño fue lesionado en un ojo cuando el maestro le tiró una bola mientras llevaban a cabo juegos escolares. El tribunal encontró que la actividad no era inherentemente peligrosa y que no había habido negligencia.

En *Reithardt* v. *Board of Education*, 111 P.2d 440 (1941) una niña que estaba sentada en una ventana fue derribada por otra y sufrió lesiones. El accidente ocurrió en un salón mientras los estudiantes esperaban por el comienzo de una clase. El tribunal resolvió que el accidente había sido causado por la acción imprudente de la segunda niña (eran estudiantes de escuela superior) y que no había habido negligencia de parte de las autoridades escolares. En *Frace* v. *Long Beach City High School District*, 137 P.2d 60 (1943) un estudiante de escuela superior sufrió lesiones debido a la explosión de unos agentes químicos que otros compañeros le habían dado y con los cuales él se puso a hacer experimentos. Esto ocurrió en el garage de la casa de uno de los estudiantes. Las sustancias químicas habían sido hurtadas por uno de los estudiantes de un salón de la escuela superior. Naturalmente, el tribunal falló a favor de la escuela.

█ Como puede esperarse la jurisprudencia es abundante en esta materia, pues generalmente los niños son impulsivos y poco precavidos y es natural que en grupos de cientos y de miles de estudiantes que concurren a las escuelas den lugar a accidentes desgraciados, algunos de los cuales pueden preverse y evitarse por los maestros pero otros son, desafortunadamente, imposibles de prever y de evitar. Los códigos, la jurisprudencia y los autores proporcionan ciertas reglas

razonables y útiles para la solución de los casos, pero es éste un campo en donde el derecho no puede ser fijo y estático y los tribunales tienen que resolver cada caso de acuerdo con sus circunstancias particulares. Por ejemplo, es universal la regla de que los maestros deben ejercer para con los niños el cuidado que una persona razonable y prudente ejercitaría—se ha resuelto que la relación entre el maestro y el niño es en cierto sentido una de "in loco parentis", *Gaincott* v. *Davis*, 275 N.W. 229 (1937)—pero es fácil ver que lo que es razonable y prudente en relación con niños de primer grado no lo es necesariamente en relación con niños de octavo grado o de escuela superior. La multitud de casos y la infinidad de circunstancias posibles han producido y producirán jurisprudencia disímil. Contrario a los casos anteriormente citados hay otros en que los tribunales han concedido indemnizaciones, *La Valley* v. *Stanford*, 70 N.Y.S.2d 460 (1947); *Brooks* v. *Jacobs*, 31 A.2d 414 (1943); *Gaincott* v. *Davis*, supra; *Ferraro* v. *Board of Education*, 212 N.Y.S.2d 615 (1961); y *Christofides* v. *Hellenic Eastern Orthodox Christian Church*, 227 N.Y.S.2d 946 (1962).

En los casos más recientes como en el de *Ferraro*, supra, y el de *Christofides*, supra, los tribunales han exigido un mayor grado de cuidado de parte de las escuelas y los maestros para con los niños de poca edad, especialmente cuando éstos se encuentran en situaciones en que se supone que estén bajo la vigilancia de sus maestros, como cuando están en los salones de clase y llevando a cabo actividades dirigidas o supervisadas por los maestros. Es natural que así sea dada la tendencia actual jurisprudencial y de la doctrina en el campo de daños y perjuicios. Véase el capítulo titulado "Torts and Insurance" de Friedmann, *Law in a Changing Society*, London, Stevens & Sons, Ltd., 1959, págs. 126 y ss.

Estamos fallando a favor del demandante y nos explicaremos, pero primero deseamos comentar el caso de *Christofides*, supra, porque es en cierto modo muy parecido al caso de autos

y porque en ambos casos el factor tiempo (el tiempo disponible durante el cual el daño pudo haberse evitado de haber estado el maestro presente) unido a la ausencia injustificada del maestro del salón de clases producen la causa legal.del daño. En el caso que comentamos los niños llegaron al salón de clases a tiempo pero el maestro no estaba presente. Como es corriente en esos casos los niños empezaron a jugar y a correr por el salón, situación que duró como un cuarto de hora. No sabemos si intencional o accidentalmente, un niño cortó a otro con una cuchilla. La prueba demostró que el niño que portaba la cuchilla había estado por cinco o diez minutos esgrimiendo el arma por el salón. Al fallar a favor del demandante el tribunal razonó que si el maestro hubiese estado presente en el salón se hubiese percatado del peligro que representaba que mientras los niños jugaban y corrían por el salón hubiese uno esgrimiendo una cuchilla y en el ejercicio razonable de su deber lo hubiese evitado. O sea, al maestro ver la situación peligrosa es razonable esperar que el maestro en el cumplimiento de su deber le hubiese quitado la cuchilla al niño o le hubiese ordenado que la guardara, y no hubiese permitido que el niño continuara su juego peligroso por cinco o diez minutos. Encontró el tribunal relación entre la falta de supervisión que sufrieron los niños por la ausencia del maestro del salón de clases y la lesión sufrida por el demandante. Aunque la causa eficiente del daño fue el acto de una parte interventora (el niño que tenía la cuchilla) la causa legal radicó en la negligencia consistente en tener los niños en el salón de clases sin supervisión.

En el caso de autos, como en el que acabamos de comentar, hay que conceder que la causa interventora fue imprevisible y extraordinaria. Esa circunstancia dentro de otro cuadro de hechos seguramente hubiese relevado de culpa al demandado pero creemos que la causa legal del daño fue la ausencia, que nunca fue explicada, del maestro del salón de clases porque si el maestro hubiese estado presente es muy

probable que hubiese podido evitar el acto torticero ya que, en primer lugar, la presencia de un maestro varón en el salón de clases posiblemente hubiese intimidado al intruso y éste no hubiese cortado al menor; además, como el intruso estuvo. por unos minutos amenazando a los estudiantes durante ese tiempo el maestro, con su madurez superior a la de los niños, probablemente hubiese bregado con la situación en tal forma que se hubiese evitado la lesión. Por lo menos el maestro no hubiese permitido que el menor lesionado se acercase al intruso amenazante. Que nada de esto es imposible lo demuestra el hecho probado que después que el intruso cortó al demandante el maestro (quien debemos entender llegó al lugar) y otro estudiante sacaron al agresor del salón. Concluimos que, igual que en el citado caso de *Christofides*, la ausencia del maestro fue la causa legal del daño porque la acción del tercero interventor (en este caso el intruso) no fue súbita e imposible de prever (como lo fue en el caso de *Ohman*, supra) sino que hubo algún tiempo disponible en que el maestro pudo haber evitado la lesión si hubiese estado presente. Como se sabe hay circunstancias en que la causa interventora releva de responsabilidad al demandado y hay también circunstancias en que no lo releva. Sobre el particular pueden verse las anteriormente citadas discusiones de Prosser y de Harper & James. No es irrazonable esperar que durante las horas de clase no sólo los niños tengan que estar en el salón sino que los maestros también.

Desde luego, no estamos abriendo la puerta para que los padres de los 593,245 niños que hay en las escuelas públicas y de los 52,383 niños que hay en las escuelas privadas de Puerto Rico[4] soliciten y obtengan sentencias por cada peladura o golpe que se den los niños en sus juegos. Eso es parte del precio que se paga por ser joven. Hacer lo contrario pondría en peligro el sistema educativo público y privado y no

---

[4] *Anuario Estadístico de Puerto Rico, 1960,* publicado por la Junta de Planificación de Puerto Rico, pág. 41.

tenemos duda de que el sistema educativo es más importante y necesario que el deseo de las personas de obtener sentencias remuneratorias.

Es necesario tomar en consideración los elementos genéricos y los individuales de cada caso. Como explican Castán (en su excelente libro *La Formulación Judicial del Derecho*, Editorial Reus, Madrid, 1954, pág. 131) y Legaz (*Filosofía del Derecho*, Editorial Bosch, Barcelona, 1953, pág. 464), todo caso es individual y tiene un algo de irreducible a los demás que exige tener muy presentes sus circunstancias y factores individuales. "Cuando lo típico predomina sobre lo individual —escribe Legaz— no hay otro medio posible, ni más seguro, de ser justo, e incluso equitativo, que poner en práctica el criterio igualitario prefijado en el esquema legal. Ahora bien, si aún dentro de una serie típica de casos, lo individual supera a lo genérico, entonces la misma justicia exige la práctica de la equidad, es decir, el no aplicar el esquema lógico, genérico y abstracto de la norma, sino una medida adecuada a esos elementos individuales: pues lo contrario sería faltar a la equidad, y faltar a la equidad sería faltar a la justicia, pues sería tratar igualmente lo desigual y lo desigual ha de tratarse desigualmente." Para otra excelente discusión, además del arriba citado libro de Castán, de lo que llamó apropiadamente el profesor G. W. Paton (*Jurisprudence*, 2da. ed., 1951, Oxford, pág. 155) la angustia de la decisión (the agony of decision) véase Pound, *Law Finding Through Experience and Reason*, U. of Ga. Press, 1960.

*Se confirmará la sentencia del Tribunal Superior, Sala de Ponce, dictada en este caso en 6 de septiembre de 1962.*