MIGUEL A. COLÓN RIVERA, ETC., demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS, demandados y recurridos.

*Número:* R-70-253      *Resuelto:* 15 de marzo de 1971

*Goldman, Antonetti & Subirá* y *David F. Barreto,* abogados de los recurrentes; *Gilberto Gierbolini, Procurador General,* y *Bienvenido Vélez Coello, Procurador General Auxiliar,* abogados del Estado Libre Asociado.

PER CURIAM: █ Reclaman del Estado Libre Asociado, la menor Marta Magdalena Colón Yera y sus padres, los

daños sufridos con motivo de un accidente que tuvo la menor en el servicio sanitario de la escuela a que asistía. La joven Marta salió de clase a las 11 de la mañana. Entraba a clases nuevamente a las doce. Luego de almorzar en los predios de la escuela subió al segundo piso para ir al servicio sanitario. Entró al servicio y ocupó uno de los cubículos. Acabando de entrar, un niño de 11 años entró al servicio de las niñas e intentó penetrar en los cubículos donde estaban otras niñas. No lo logró porque las puertas tenían echado el pestillo. Entonces trató de entrar en el cubículo donde estaba la demandante. Éste halaba hacia afuera, la niña halaba hacia adentro. En el forcejeo la puerta le pilló el dedo índice de la mano izquierda perdiendo "parte de la falange distal del dedo". El juez que conoció del caso desestimó la demanda. Su actuación fue correcta. La niña lesionada, de diez años de edad, sufrió el accidente en un área que no es de libre acceso, donde no se supone que entren niños del sexo opuesto, no habiéndose establecido que los profesores o los conserjes tuvieran conocimiento de que actos similares habían ocurrido anteriormente. No se estableció que los niños acostumbraran a entrar al servicio sanitario de las niñas. No era razonable anticipar la presencia de un niño tratando de entrar a un cubículo ocupado, en el servicio de las niñas. Desde el punto de vista del derecho lo acaecido no era previsible.

■ Pero aún suponiendo que la falta del pestillo en la puerta del cubículo fuera factor determinante de la responsabilidad del Estado Libre Asociado, el juez no formuló conclusión alguna respecto al tiempo que hacía que el pestillo estaba defectuoso, y no se elevó la transcripción de la evidencia para poner a este Tribunal en condiciones de hacer su propia determinación. ¿Si el pestillo se hubiera roto el mismo día en que ocurrió el accidente, qué responsabilidad podía imponérsele a la parte demandada? Es cierto que el Estado debe estar atento para que en los planteles de ense-

ñanza exista vigilancia adecuada, y se tomen todas las medidas necesarias para velar por el bienestar y la seguridad de los miles de estudiantes que asisten a las escuelas públicas, pero ciertamente no es justo ni razonable hacerlo responsable de toda posible lesión que sufra un estudiante. Como expresamos en *Cruz Costales* v. *E.L.A.*, 89 D.P.R. 105–111 (1963) : "Como puede esperarse la jurisprudencia es abundante en esta materia, pues generalmente los niños son impulsivos y poco precavidos y es natural que en grupos de cientos y de miles de estudiantes que concurren a las escuelas den lugar a accidentes desgraciados, algunos de los cuales pueden preverse y evitarse por los maestros pero otros son, desafortunadamente, imposible de prever y de evitar."

En cuanto a la responsabilidad de los padres del menor causante del daño, no habiéndose elevado la transcripción de evidencia tampoco estamos en condiciones de determinar si la conclusión del tribunal de instancia al efecto de que "en este caso no se ha demostrado que los actos o conducta del hijo se deban al incumplimiento por parte del padre o de la madre de su deber de vigilancia, represión, disciplina y educación", no está sostenida por la prueba.

*Se confirmará la sentencia.*

El Juez Asociado Señor Torres Rigual, no intervino.

El Juez Asociado Señor Rigau disiente en opinión separada.

—O—

Opinión disidente del Juez Asociado Señor Rigau.

San Juan, Puerto Rico, a 15 de marzo de 1971

Este caso, resuelto mediante una opinión *per curiam* del Tribunal, trata de una reclamación de daños por una lesión sufrida por una niña de 10 años de edad en una escuela pública.

No hay controversia sobre las determinaciones de hechos expresadas por el tribunal de instancia en su opinión y las partes sometieron el caso a base de dichas determinaciones. Lo que teníamos que resolver en este caso es si, dados esos hechos, procedía o no conceder compensación y, en caso afirmativo, la cuantía de la misma.

La niña perjudicada era una estudiante de una escuela pública en Río Piedras. Los hechos ocurrieron el 10 de febrero de 1969. En lo pertinente, el tribunal de instancia concluyó lo siguiente:

"En la referida fecha, dicha menor salió de clases a las 11:00 A.M. para comenzar nuevamente a las 12:00 del mediodía. Luego de almorzar, la referida menor permaneció en los predios de la escuela y como a eso de las 11:30 A.M., junto a otras amigas, subió al segundo piso del edificio de la escuela para ir a servicio sanitario.

Entró al referido servicio sanitario y penetró a uno de los cubículos del mismo, pero no pasó la aldaba o cerradura por que ésta estaba rota. Acabando de entrar al cubículo el menor estudiante Luis A. Rivera, entró al cuarto de baño de las niñas, intentó abrir el cubículo donde estaban algunas de las compañantes de la demandante y al no lograrlo trató de abrir la puerta del cubículo donde había penetrado la menor demandante. La intención del referido estudiante, según el testimonio de la menor demandante era para tratar de besar a las niñas.

El menor Rivera comenzó a intentar abrir la puerta del cubículo halándola hacia afuera y la menor reclamante lo impedía halando hacia adentro. Esto lo hacía la demandante agarrando con ambas manos la puerta del cubículo por el borde donde ésta termina (como a 14 pulg. del piso) quedando su mano izquierda cerca del lado donde gira la misma en los goznes.

Súbitamente la puerta se cerró, pillándole a la menor demandante el dedo índice de su mano izquierda y produciéndole una lesión que causó la pérdida de parte de la falange distal del dedo, lo que ocasionó hondos sufrimientos a ella y a sus padres."

A pesar de lo anterior, el tribunal de instancia declaró sin lugar la demanda y la opinión mayoritaria de este Tribunal confirma esa decisión.

Lamento tener que disentir de la opinión del Tribunal. La niña perjudicada, como alumna de esa escuela, tenía derecho a utilizar ese cuarto de baño. La escuela le debía un mínimo de protección. Ese mínimo de protección era tener allí un pasador o cerradura en buen estado de funcionamiento. De haberlo tenido no se hubiese producido el forcejeo que le produjo la lesión a la niña. Prueba de ello es que las niñas que estaban en los otros cubículos que el niño trató de abrir y no pudo, por estar sus puertas bien aseguradas, no recibieron lesión alguna.

Para ver la iniquidad de la situación no satisfactoria que la opinión mayoritaria da por buena cabe considerar los siguientes interrogantes. ¿A qué padre le gustaría que cuando su hijita de 10 años va al servicio sanitario de la escuela, venga un varón a abrirle la puerta, diz que para besarla, o para lo que sea? ¿No es acaso patético el cuadro, presente en este caso, de esta niña de 10 años agarrada a la puerta del servicio sanitario con sus manecitas, forcejeando para que no se la abran, mientras que afuera hay un varón que quiere abrirla para forzar su entrada en el cubículo? ¿Es de esperarse acaso que ella gustosamente abra la puerta y lo invite a entrar? No creo que la libertad sexual comienza con niñas de 10 años de edad.

Los cubículos de los servicios sanitarios en las escuelas, y en todas partes, deben tener y por regla general tienen pasadores o cerraduras de alguna especie. Lo anómalo es que no las tengan. Tan claro es que pueden preverse casos de indisciplina como el del caso de autos, que los otros cubículos en aquel cuarto de baño tenían pasadores o aldabas. En otras palabras, los pasadores o cerraduras en esas puertas obviamente no se ponen para decorarlas sino para que puedan

cerrarse y así evitar situaciones como las de este caso y otros análogos.

Es deber de los que operan escuelas ver que los cubículos de los servicios sanitarios de las niñas puedan cerrarse con pasadores o con alguna cerradura apropiada para la protección de dichas niñas. Creo que esa proposición es evidente. Se cierran los almacenes de materiales escolares, se cierran los salones de clases y las oficinas. ¿No merece igual o mayor cuidado la moral, la integridad física y la seguridad de las niñas de tierna edad que acuden a los planteles escolares?

¿Qué clase de valores vamos a sostener en nuestras decisiones? Hace apenas unos días, en *Piovanetti Doumont* v. *Martínez*, 99 D.P.R. 663 (1971), un caso que trata de cobro de dinero, dijimos, muy acertadamente a mi entender, que "la misión del Juez es sobre todo y propiamente la de hacer justicia y esta justicia solo puede realizarse vivificando con la equidad la prescripción de la ley."

¿Vamos a vivificar la ley para proteger el interés económico en una finca y en unos dólares pero vamos a rehusar hacerlo para proteger la integridad física de una niña escolar de 10 años de edad que sus padres confiadamente ponen en la escuela? En el caso de autos, para hacer justicia no tenemos siquiera que recurrir a la equidad para vivificar la prescripción de la ley. Reconociendo su deber moral, que es la equidad en estos casos, el Gobierno de Puerto Rico se adelantó a este Tribunal y mediante legislación expresa autorizó las demandas contra el Estado en casos de daños y perjuicios. Ley Núm. 104 de 29 de junio de 1955; 32 L.P.R.A. sec. 3077.

En *Cruz Costales* v. *E.L.A.*, 89 D.P.R. 105 (1963), caso que citan el Tribunal de instancia y este Tribunal, reconocimos que "la multitud de casos y la infinidad de circunstancias posibles han producido y producirán jurisprudencia disímil." Como un *caveat* que creímos oportuno, allí señalamos que la jurisprudencia más reciente exige un mayor grado

de cuidado de parte de las escuelas para con los niños de poca edad que el que se exigía anteriormente.

Para que nuestra opinión en el caso de *Cruz Costales* no se tomase como un cheque en blanco, allí expresamos a la pág. 115 lo siguiente:

"Es necesario tomar en consideración los elementos genéricos y los individuales de cada caso. [T]odo caso es individual y tiene un algo de irreducible a los demás que exige tener muy presentes sus circunstancias y factores individuales. Cuando lo típico predomina sobre lo individal no hay otro medio posible, ni más seguro, de ser justo, e incluso equitativo, que poner en práctica el criterio igualitario prefijado en el esquema legal. Ahora bien, si aún dentro de una serie típica de casos, lo individual supera a lo genérico, entonces la misma justicia exige la práctica de la equidad, es decir, el no aplicar el esquema lógico, genérico y abstracto de la norma, sino una medida adecuada a esos elementos individuales: pues lo contrario sería faltar a la justicia, pues sería tratar igualmente lo desigual y lo desigual ha de tratarse desigualmente." (Citas omitidas.)

Se le hace un flaco servicio al Departamento de Instrucción y a los miles de niños que a las escuelas acuden, al resolver como el Tribunal ha resuelto en este caso, lo cual no es otra cosa que dar por buena una situación que no lo es y que solo puede, al condonarla, propiciar el descuido y la desidia en la conservación de las escuelas públicas. Sé que el Departamento de Instrucción no desea eso. Ayudémosle no cayendo en la complacencia injustificada. No es muy costoso ni muy difícil mantener en buen estado los pasadores de las puertas de los cuartos de servicios sanitarios de los niños y las niñas. Creo que es lo menos que se puede pedir.

Yo resolvería declarando con lugar la demanda y concediendo una compensación adecuada.