# 2001 DTA 147

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA**

ANA BONELLI
Demandante-Apelante

v.

ROYAL & SUN ALLIANCE INSURANCE COMPANY
Demandada-Apelada

Núm. KLAN-01-00206

San Juan, Puerto Rico, a 17 de abril de 2001

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Rodríguez García y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Debemos dirimir en la causa de título si procede una acción en daños y perjuicios presentada por una víctima de robo en una residencia, cuyo propietario ignoró implantar medidas de seguridad previamente sugeridas por la Policía de Puerto Rico.

Se apela de sentencia dictada el 16 de enero de 2001, archivada en autos copia de su notificación el 7 de

febrero de 2001, en la que se desestimó demanda de daños y perjuicios incoada por la Sra. Ana Bonelli ("*Bonelli*") contra la Royal & Sun Alliance Insurance Company, ("*la aseguradora*") con motivo de los daños que recibiera por el robo del que ella y su anfitrión Sr. Luis Cartagena (en adelante "*Cartagena*") fueron objeto mientras ella lo visitaba en su residencia.

Habiendo comparecido ambas partes y expuesto articuladamente sus posiciones, hemos examinado y ofrecido cabal consideración a los autos y a la causa propiamente, por lo que resulta forzoso confirmar, modificando en parte, la sentencia emitida por el hermano foro de Instancia, Sala Superior de Caguas, Hon. Juez Carlos F. Colón Santini. Exponemos.

## HECHOS

El recurso de Bonelli recoge suscinta y adecuadamente los hechos, los cuales no se impugnan por la aseguradora.

El 5 de septiembre de 1999, un domingo, aproximadamente a las 4:00 p.m., Cartagena y su invitada Bonelli, se encontraban en la residencia del primero localizada en el Barrio La Mesa, Carretera 795, Kilómetro 5, Caguas. Mientras conversaban, tres individuos armados, con guantes y enmascarados penetraron en la residencia de Cartagena. Los individuos, de forma amenazante y agresiva, le indicaron a la pareja que se trataba de un asalto, los tiraron al suelo, los agredieron y amenazaron, amarrándolos con correas y cables eléctricos. Los asaltantes le robaron a la pareja múltiples objetos de valor incluyendo efectivo, prendas de oro, y tarjetas de crédito, entre otros. Bonelli le reclamó a la aseguradora de Cartagena sumando su pérdida en joyas, carteras y efectivo un total de $54,563.34.

A eso de las cinco de la tarde, luego de que los asaltantes se marcharon, llegaron los agentes del CIC de Caguas para investigar los hechos acontecidos en la residencia de Cartagena. El 24 de agosto de 1999, doce (12) días antes de los referidos hechos, el hijo de Cartagena había sido víctima de otro asalto en la misma residencia. Tampoco parece haber discrepancia entre Bonelli y la aseguradora de que en dicha ocasión, la Policía le informó a Cartagena que era indispensable arreglar el portón de entrada, poner una verja con alambre de púas, alumbrar adecuadamente los perímetros de su hogar y poner guardias de seguridad, ello debido a la alta incidencia criminal que afectaba el área. A la fecha del segundo robo donde resultara perjudicada Bonelli, Cartagena no había seguido las recomendaciones de la Policía. Luego de requerimientos extrajudiciales por Bonelli los cuales fueron denegados por la aseguradora, la primera presentó demanda el 1 de septiembre de 2000, solicitando daños y perjuicios por los sufrimientos y angustias mentales que sufriera como consecuencia del asalto descrito, así como por la pérdida de sus bienes personales.

El 2 de noviembre de 2000, la aseguradora solicitó la desestimación de la demanda fundamentada en que la reclamación de Bonelli no se justifica, ya que un anfitrión de una residencia no tiene responsabilidad civil alguna en relación con los daños sufridos en la misma por un invitado como consecuencia de la comisión de actos delictivos por un tercero en la persona del invitado y, que en Puerto Rico una doctrina establecida por el Tribunal Supremo obliga a los tribunales de instancia. *Capestany v. Capestany*, 66 D.P.R. 764 (1946). La aseguradora adujo ante Instancia que el Tribunal Supremo estableció en *Rivera v. Cruz*, 119 D.P.R. 8 (1987) que un anfitrión de una residencia no tiene responsabilidad civil por los daños que en la misma sufra un invitado como consecuencia de actos delictivos cometidos por un tercero en la persona del invitado.

Sometida la controversia ante instancia a través, de subsiguientes comparecencias por un escrito de las partes, éste dictaminó que:

"*Notamos que entre la comisión del delito contra el Sr. Alejandro Cartagena y la comisión del delito contra la aquí demandante transcurrieron apenas doce días. No vemos que exista un nexo causal entre no tomar las medidas de seguridad, aconsejadas por la policía, y el robo sufrido por la demandante.*" Como dijo el Tribunal

Supremo en *Estremera, supra*, pág. 857, ▓ *"Dicha omisión no constituye conducta afirmativa que aumente considerablemente el riesgo, de daño al demandante por el acto criminal de un tercero, en cuyo caso podría imponérsele responsabilidad al demandado"*. El dueño de la casa (Cartagena) no creó ni agravó la situación sobre la cual actuó el tercero para producir el daño. Dicha situación es producto de la prevaleciente falta de seguridad pública ante la insuficiencia de los medios del Estado para controlar la violencia y el crimen. Véase Estremera, *loc. cit.*

A pesar de que los actos delictivos nos afectan a todos, y en el Puerto Rico de hoy estos van en aumento en forma vertiginosa, el peso de mantener precauciones continuas contra ella excede el riesgo aparente. Prosser citado en *Estremera, supra*. El no tomar las precauciones recomendadas por la Policía no puede establecerse como nexo causal del robo. La naturaleza de un edificio de vivienda no exige tales medidas de seguridad, algunas de ellas irrazonables. Aún así, el poco tiempo transcurrido entre los dos actos delictivos probablemente no hubiera permitido implantar tales medidas de seguridad.

Que el crimen se hubiese producido con o sin las medidas de seguridad como acto independiente de la conducta de Cartagena, es premisa innegable del diario vivir aplicando por analogía a *Estremera, supra*.

Por los fundamentos expuestos se desestima la demanda. *"Se le impone las costas del pleito a la parte demandante más $500.00 por concepto de honorarios de abogados."*

Inconforme, Bonelli acude ante este Foro señalando que Instancia erró al desestimar la demanda y concluir que no procede una acción en daños y perjuicios presentada por una víctima de robo en una propiedad, cuyo propietario ignoró implantar medidas previamente sugeridas por la Policía de Puerto Rico y, al imponer a la peticionaria las costas del pleito, más $500.00 por concepto de honorarios de abogado.

Determinamos que se trata de un caso desgraciado que lamentablemente se ha repetido durante muchos años, en miles de hogares puertorriqueños, pero el cual no implica responsabilidad civil alguna del dueño del hogar o, su aseguradora. Exponemos.

## EXPOSICION Y ANALISIS

El crux de la causa aquí considerada es, si hubo causalidad adecuada por los daños sufridos por Bonelli y las omisiones o actos realizados por Cartagena aquí representado por su aseguradora.

En el Artículo 1802 del Código Civil, 1930, 31 L.P.R.A. 5141 está inmerso el principio de la causalidad adecuada, nexo eficiente entre daño y su autor, que a su vez contesta ¿cuál sería la causa próxima del accidente? *Negrón García v. Noriega Ortiz*, 117 D.P.R. 570, 575-576 (1986). En esta jurisdicción se ha establecido reiteradamente que *"causa es la condición que ordinariamente produce el daño, según la experiencia general"*. *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700, 704, (1982); J. Santos Briz, *Derechos de Daños*, Madrid, Ed. Rev. Der. Privado, 1963, pág. 215. *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294, 310 (1990). Es por ello que un demandado responde a daños si su negligencia, sea ya esta por acción u omisión, es causa próxima del daño, aun cuando no sea la única causa del mismo. *Velázquez v. Ponce*, 113 D.P.R. 39 (1982). Al determinar si una acción u omisión es la causa próxima, adecuada o eficiente de un daño, especialmente cuando se trata de un daño que es el resultado de un acto delictivo de un tercero, es preciso hacer una retrospección del *"alegado acto negligente"* para ver si este se constituye en consecuencia razonable y ordinaria del daño delictual. *Estremera v. Inmobiliaria, supra*. El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios el demandante pruebe que la negligencia del demandado fue la que en mayor probabilidad causó el daño sufrido, *Soc. de Gananciales v. González Padín*, 117 D.P.R. 94 (1986).

Lo señalado por Bonelli en su recurso, aún de ser del todo cierto, no constituye causa eficiente y próxima del abominable acto criminal de que fuera objeto ella, y Cartagena.

El Tribunal Supremo en fecha relativamente reciente, *Vega Marrero v. Autoridad de Energía Eléctrica*, Op. 21 de septiembre de 1999, **99 J.T.S. 145**, abordó la normativa antes expresada manifestando:

*"Así, en Cruz Costales v. E.L.A., 89 D.P.R. 105 (1963), determinamos que incurrió en responsabilidad el Estado por los daños sufridos por un estudiante en una escuela como resultado de una agresión por una persona ajena al plantel en momentos en que el maestro se ausentó del salón de clases. Concluimos allí que el daño sufrido por el estudiante fue producto de la ausencia inexplicada del maestro de su salón de clases, ausencia que se convirtió en la causa legal del daño. Posteriormente, en Pabón Escabí v. Axtmayer, 90 D.P.R. 20 (1964), resolvimos que una hospedería responde por los daños previsibles sufridos por un huésped asaltado en un hotel por la negligencia de aquella al no proveer medidas de protección apropiadas. De igual forma, en Elba A.B.M. v. U.P.R., supra, resolvimos que incurrió en responsabilidad una institución educativa que, con pleno conocimiento de los actos delictivos que ocurrían en sus predios, no tomó medidas de seguridad adecuadas para proteger la vida de los estudiantes. Resolvimos allí que el daño sufrido por una estudiante que fue atacada y violada en la institución fue el producto de la inercia de la institución al quebrantar su deber de actuar, lo que constituyó conducta negligente al amparo del Art. 1802, supra. Recientemente, en J.A.D.M. v. Centro Com. Plaza Carolina, supra, responsabilizamos a un centro comercial por los daños ocasionados a una joven por quebrantar su deber de velar por la seguridad del público que acudía a sus facilidades al no tomar medidas de vigilancia adecuadas para evitar actos delictivos previsibles. Igualmente, en Tormos Arroyo v. D.I. P., supra, responsabilizamos al Estado (Departamento de Educación) por la golpiza que unas personas ajenas a una escuela pública le propinaron a un estudiante de ésta a un lugar cerca de la escuela. Resolvimos allí que aunque la golpiza la propinó un intruso fuera de la escuela, el acto ilícito de éste se habría evitado si el Estado hubiese cumplido con su deber, la vigilancia y protección a la seguridad de los estudiantes. La omisión de la diligencia exigible por parte del Estado -determinamos allí- fue la causa legal del daño.*

*En resumen, pues, en nuestra jurisprudencia hemos seguido una clara trayectoria en diversas situaciones de imponer responsabilidad a una entidad por actos delictivos de terceros, cuando ésta a su vez no cumplió con su deber de tomar medidas de precaución razonables, que hubieran evitado la ocurrencia de un daño previsible."* (Enfasis suplido).

En *Elba A.B.M. v. U.P.R.*, *supra*, el Tribunal Supremo esbozó la norma general que aplica a los casos como el que nos ocupa:

*"[L]a norma general continúa siendo que no se es responsable de la criminalidad general que exista en el ambiente de la sociedad en que la persona se desenvuelve, y que una entidad o institución no es un asegurador de la seguridad de las personas con las que se relaciona o la patrocinan. Sin embargo, dicha norma general no aplica cuando se llevan a cabo actividades que por su 'naturaleza esencial' hacen necesario que la entidad o institución venga obligada 'a ofrecer un grado de protección y seguridad independiente del que puedan proveer las agencias de seguridad pública'. (Enfasis suplido.) Estremera v. Inmobiliaria Rac, Inc., supra, pág. 856".*

Aquí, Cartagena no realizaba en su hogar una "*actividad esencial*" con proyecciones que trascendiera más allá de una ordinaria visita dominical vespertina. Un anfitrión de una residencia no tiene ni podría tener responsabilidad civil alguna en relación con los daños sufridos en la misma, por un invitado como consecuencia de la comisión de actos delictivos por terceros extraños en la persona del invitado. Otra podría ser la situación si Cartagena, lo que de forma alguna se alega, se hubiera confabulado con los asaltantes, para que éstos asaltaran su residencia con la intención de despojar a Bonelli de sus valiosas prendas y haberes.

Bonelli argumenta que se le debe ofrecer protección y seguridad adecuada a los huéspedes y visitantes a residencias privadas, al igual que se hace a los que visitan centros comerciales, hospitales, escuelas y hoteles. Más aún, cuando se tiene conocimiento que la residencia se encuentra en un área de alta incidencia criminal. La propuesta aunque interesante, resulta imposible de realizar. Coinciden varios actores que hacen imposible lo propuesto. Nos preguntamos, que área de Puerto Rico no es una de alta incidencia criminal. Comparemos las estadísticas del área de Caguas con las otras áreas delimitadas como tales por la Policía. Las cifras representan

los Delitos Tipo I informados por áreas, según recopilados por la División de Estadísticas de la Policía, correspondiente al periodo del 1 de enero al 15 de marzo de 2001. Los Delitos Tipo I incluyen asesinatos, homicidios, violaciones, robos, agresiones agravados, escalamientos, apropiaciones ilegales y hurto de autos.

| Area | Totales acumulados 21 de enero a 15 de marzo |
|------|-----------------------------------------------|
| Caguas | 1,176 |
| Bayamón | 3,489 |
| Carolina | 1,173 |
| Guayama | 611 |
| Aguadilla | 806 |
| Utuado | 322 |
| Fajardo | 582 |
| San Juan | 2,705 |
| Arecibo | 1,277 |
| Ponce | 1,261 |
| Humacao | 641 |
| Mayagüez | 898 |

El total de Delitos Tipo I cometidos en Puerto Rico en los primeros (75) días del presente año fue 14,941.

Lo que antecede resalta que la mitad de Puerto Rico, a juzgar por las más recientes cifras, serían clasificadas como "*área de alta incidencia criminal*". El sencillo ejercicio aritmético antes practicado, presagia la compleja y posiblemente imposible tarea de aceptar lo que Bonelli propone, que extendamos el manto de protección y seguridad a los visitantes de residencias como en efecto, se ha extendido condicionalmente a los huéspedes de centros comerciales, hospitales, escuelas y hoteles. Como delimitar las áreas de "*alta incidencia*" y las medidas de protección a tomarse por áreas y residencias particulares sería misión imposible.

Otro escollo tal vez insalvable que impide que aceptemos la propuesta de Bonelli, lo constituye el hecho de que, no obstante, las medidas de seguridad que puedan tomarse, el hogar puertorriqueño continua vulnerable a los embates de la ola criminal que nos arropa. Tan reciente como a principios de año, se cometió un robo en una conocida urbanización cuya propiedad está localizada frente a la residencia de la primera mandataria del país, que a su vez está custodiada por su escolta oficial. Para colmo, los maleantes salieron de la urbanización en el vehículo de la víctima que se unió pasando desapercibidamente a los vehículos de la escolta, en su salida de la urbanización. La urbanización es una cercada y de acceso controlado. Ante lo narrado, ¿las precauciones impartidas por la Policía a Cartagena, hubiera evitado el despojo de las joyas de Bonelli?

El elemento "*costo*" también es esencial. Se observa que el Tribunal Supremo, para propósitos de imposición de responsabilidad civil, categorizó las medidas a tomarse en los centros comerciales por las categorías de los mismos. Sin duda, el poder adquisitivo de los centros comerciales, lo cual le provee los medios

para implementar medidas de seguridad, es uno de los elementos a considerar. No cabe duda que el propietario de una residencia, agobiado ya por la multiplicidad de gastos para sostenerla, no podría afrontar estipendios adicionales como sería el de dotar su propiedad de "*guardias de seguridad*" privados.

Recomendar y dotar a una residencia de medidas de seguridad que eviten o aminoren la comisión de delitos dentro de sus predios necesitaría una evaluación de la propiedad y su vecindario. Ello requiere lo que se conoce en la industria de la seguridad como un "*security assesment*" que de por sí es costoso, si lo realiza una empresa especializada privada. Nuestra sociedad no podría depender de la Policía para tales evaluaciones por ser sus recursos escasos para estos menesteres.

Otro aspecto que se afectaría, de insistirse que los dueños de residencias tomen medidas adicionales de seguridad de las que ya algunas han sido dotadas como rejas, cerrojos, alarmas y alambres, sería la de desanimar las visitas sociales de vecinos y familiares a nuestros hogares. Ello atentaría en contra de nuestra fibra social de pueblo que es muy dable a socializar lo que incluye visitas familiares especialmente los días domingo. Si estiramos el manto de responsabilidad torciera a los hogares en casos de actuaciones criminales que cometan terceros en contra de invitados, estaríamos literalmente forzando a los dueños a convertir en fortalezas las ya casi cerradas residencias. Se sugiere que la responsabilidad del dueño del hogar debe extenderse a toda residencia previamente escalada o en la cual se haya cometido un robo. La implementación de medidas de seguridad a unas residencias y no a otras, tendería a marcar los hogares en residenciales, urbanizaciones y comunidades que se vean obligadas a contratar guardias de seguridad, instalar focos adicionales de iluminación y tomar otras medidas en hogares marcados como lugares en que se ha delinquido contra sus moradores y sus invitados.

En el caso de autos no existe la referida previsibilidad que conlleva responsabilidad civil extracontractual, al desconocer Cartagena a los asaltantes y mucho menos preveer, que sería víctima de robo un domingo por la tarde a plena luz del día. De lo expresado puede colegirse que en los hechos que hemos considerado no existió un nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones. El hecho de que la policía unos días antes del suceso, le indicara a Cartagena que recomendaba arreglo a una verja, iluminación adicional y guardias de seguridad, no hubiera asegurado de haber Cartagena tomado las medidas, de que su invitada y él no hubieran sido asaltados. Si el área era de alta incidencia criminal era lógico que la propia policía tomara medidas para reducirla, lo que de autos no se desprende.

Como bien señala la aseguradora en su alegato. No procede desplazar la culpabilidad de los terceros criminales a los anfitriones que han sufrido algún delito en sus residencias por segunda ocasión. El Tribunal Supremo estableció en *Estremera v. Inmobiliaria, Rac. Inc., supra*, lo siguiente:

"*[e]l incremento de la violencia, el reto del criminal a la paz y sosiego del pueblo y la creciente probabilidad de que una persona sea víctima de un atentado contra su vida, su libertad o su propiedad, es una enfermedad del medio ambiente en que las personas nacen, se educan, trabajan o simplemente existen. Es condición o circunstancias de la atmósfera general en que se desarrolló la gestión vital de cada miembro de la sociedad; y es, primordialmente, problema de seguridad pública y responsabilidad del Estado, la única entidad con los recursos y la fuerza necesarios para mantener la paz y la majestad de la Ley.*"

Bonelli razona que Cartagena fue negligente al hacer caso omiso a las medidas que la policía le recomendó luego del primer robo. En primer lugar, las recomendaciones por lo que podemos inferir, fueron verbalizadas y las mismas son unas muy generales. En término retóricos podemos preguntarnos, ¿qué significa, "*alumbrar adecuadamente un premio de terreno*"?, habiendo ocurrido el robo a media tarde. No se explica dónde y cómo se debió poner los alambres de púas, ¿tenía o no, la residencia de Cartagena una verja instalada?, ¿Cuántos guardias de seguridad requiere la propiedad y durante qué horario? Tampoco se expone si Cartagena tenía o no otras medidas de seguridad en su hogar.

Lo anterior nos lleva forzosamente a concluir que la normativa actual es la más racional. Una vez existe la presencia de un tercero extraño que actúa criminalmente, de por sí rompe con la causalidad y destruye la previsibilidad, liberando al anfitrión de responsabilidad civil por daños que sufra un invitado en su residencia.

En torno al segundo error señalado, coincidimos con la parte apelante. Aunque la determinación de temeridad descansa en la sana discreción del Tribunal, en el presente caso la parte demandante no actuó con temeridad o frivolidad. Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. II. Se modifica aquella parte de la Sentencia de Instancia que impone $500.00 por concepto de honorarios de abogado, eliminándose la referida imposición.

## DICTAMEN

Por lo expuesto, se modifica la sentencia de Instancia eliminándose la imposición de honorarios de abogado a la parte apelante y confirmándose el remanente de su dictamen.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2001 DTA 147**

**1.** Refiriéndose al caso *Estremera v. Inmobiliaria Rac, Inc.*, 109 D.P.R. 852, 855-857 (1980).